**In re Grand Jury Proceedings Involving Eve ROSAHN, Appellant.**

**No. 819, Docket 81–6271.**

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1982.

Decided Jan. 29, 1982.

Maurice H. Sercarz, New York City, for appellant.

Stacey J. Moritz, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty. for the S. D. New York, Jane W. Parver, Mark F. Pomerantz, Robert S. Litt, Asst. U.S. Attys., New York City, of counsel), for United States of America.

Before FEINBERG, Chief Judge, and MANSFIELD and KEARSE, Circuit Judges.

MANSFIELD, Circuit Judge:

Eve Rosahn appeals from an order of the Southern District of New York entered by Judge Irving Ben Cooper adjudicating her to be in civil contempt for refusal to provide photographs, fingerprints, handwriting exemplars, and hair samples to a federal grand jury after being ordered to do so by the grand jury and the court. We vacate the adjudication of contempt. Although we find no merit in any of Rosahn's other claims, we believe that by holding her civil contempt trial in secret, over her objection, the district court deprived her of her right under the due process clause of the Fifth Amendment to a public trial of the contempt charge.

On October 20, 1981, a Brinks armored truck containing funds of the Nanuet National Bank was robbed by a group of gun-men. In the course of the robbery and the attempts to escape therefrom one Brinks guard and two police officers were killed. Shortly thereafter a federal grand jury in the Southern District of New York began investigating the robbery and a series of similar robberies that have occurred over the past several years. Investigation of the Brinks robbery uncovered the facts that one of the "getaway" cars was registered to Eve Rosahn and that a van used in the robbery had been rented from a car rental agency located near Rosahn's residence by an individual fitting Rosahn's description. Searches at the robbery scene and of the van have produced strands of hair that the government apparently believes to be those of the participants.

Eve Rosahn was arrested by New York State authorities on September 26, 1981 (almost a month before the Brinks robbery) on charge of first degree riot. The charge arose out of events that allegedly occurred during a protest demonstration in Queens, New York. Rosahn has been represented on matters relating to this charge by Sharon Flood, Esq.

New York State authorities arrested Rosahn a second time on October 27, 1981, arraigning her on the charge of criminal facilitation of the Brinks robbery and murders. She was indicted and arraigned on the indictment on October 30, 1981. At both arraignments she was represented by Ms. Flood. After taking her into custody, New York State authorities took Rosahn to the Metropolitan Correction Center (the "MCC"), a federal detention facility, where for security reasons federal authorities held her on behalf of the state. Rosahn claims that because of the tight restrictions that were imposed upon her at the MCC, she had been unable to interview and select trial counsel for the state trial at the time she was called before the federal grand jury.

On November 6, 1981, Rosahn was served with a subpoena *duces tecum* returnable on November 9, requiring her to provide photographs, fingerprints, handwriting exemplars, and hair samples to the grand jury. When, on November 9, Rosahn appeared

before the grand jury she refused to be sworn in, stating that she had not been able to retain trial counsel and that she was under indictment. The grand jury allowed her to petition the district court for an adjournment of her appearance.

At this point, at the request of the U.S. Attorney, Judge Cooper, sitting as the Part I judge, decided for security reasons to hear the application in a courtroom closed to the public. When Rosahn then appeared before Judge Cooper, Ms. Flood, who was representing her, explained on her behalf that Rosahn had been unable to retain "lead trial counsel" to represent her on the New York State Brinks charge. In the belief that the federal grand jury was investigating the same set of events as those giving rise to the state indictment, Ms. Flood argued that Rosahn should, before deciding whether to comply with the subpoena, be granted a one week adjournment so that she could choose and consult with the lawyer who would represent her on the New York charges. She also objected to the exclusion of the public from the argument on the application, pointing out that requests for adjournments of appearances before grand juries are often heard in open court and thus that there was no valid reason for closing the proceeding since, contrary to the government's contention, it was not "ancillary to" a grand jury investigation.

Judge Cooper denied the application for an adjournment, primarily on the ground that the law is clear that Rosahn had "no alternative with regard to the production of those items." He then granted a motion by Assistant U.S. Attorney Stacey Moritz, representing the government, that the minutes of the proceeding be placed under seal, to which Ms. Flood objected

"on the ground that there is nothing taking place in this proceeding which is by statute processed [sic] to be secret. There has been no testimony read nor evidence presented and I see no reason why it should be under seal." (App. 24).

Rosahn was then brought before the grand jury a second time. Again she refused to be sworn in or to provide the items. She was returned to the courtroom in which Judge Cooper was sitting. Again he excluded the public from the entire court proceeding, to which Ms. Flood objected.

Ms. Flood then advised Judge Cooper that Rosahn would not provide the items. She further stated that Rosahn realized that she could be held in contempt for failure to comply with an order of the court to provide the items, that she was aware of the consequences of a contempt adjudication, and that she realized that she would be able to purge herself of the contempt at any time in the future. On questioning by the court, Rosahn stated that she understood the penalty to which she could be subjected. Judge Cooper then offered to order her to return to the grand jury and provide the items, but she indicated that she would not comply "[s]o long as I am being denied my legal right to the counsel of my choice." Judge Cooper then found her in contempt.

Pursuant to 28 U.S.C. § 1826(a), Judge Cooper ordered that Rosahn be confined until she was willing to provide the items requested, until the expiration of the grand jury's terms, or until May 9, 1983, whichever should occur first. Rosahn was released on bail, pending this appeal, on December 30, 1981.

## DISCUSSION

■ Before considering the merits of this appeal we must decide a threshold jurisdictional question. Title 28 U.S.C. § 1826, which authorizes a district court to issue a civil contempt order, states in pertinent part, "[a]ny appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal." 28 U.S.C. § 1826(b). Rosahn filed her notice of appeal on December 23, 1981. Seven days later she was released on bail. On the assumption that the statute's 30-day rule applied, this appeal was expedited by the Clerk of this Court and thereafter argued only one day before the expiration of

the 30-day period.[1] However, 30 days have now passed since the filing of the notice of appeal, which might arguably deprive us of jurisdiction if Rosahn had been confined throughout that period.

We express no view as to that, but we are satisfied that the 30-day rule does not affect our jurisdiction during the period when a contemnor is not confined pursuant to the contempt order. In *In re Grand Jury Subpoena*, 599 F.2d 504, 506 n.2 (2d Cir. 1979), we held that we had jurisdiction to decide an appeal by a corporation of a § 1826 contempt order even though more than 30 days had passed since the filing of the appeal, relying on the fact that the contempt had resulted in a fine rather than in confinement. As the Eighth Circuit observed in *Melickian v. United States*, 547 F.2d 416, 418–19 (8th Cir.), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1684, 52 L.Ed.2d 381 (1977), the legislative history of § 1826 reveals that the 30-day provision was inserted in reaction to a Senate bill that would have denied bail to contemnors during the pendency of their appeals. The statute was designed to assure prompt release from custody of meritorious contemnors rather than to deprive the trial or appellate court of jurisdiction in the matter, which would bar consideration of contempt-related appeals after the 30-day period had expired.

"The statute calls for decision of a contemnor's appeal within thirty days and we intend to abide by that direction absent strong reasons for not doing so. We do feel, however, that when decision is impossible or unadvisable within the thirty-day period, the procedure followed by this Court which releases the contemnor pending disposition best reconciles the various interests bound up in the bail issue. The policy of the statute is upheld in that the contemnor is released until his appeal is decided. The court retains the necessary flexibility to assure a fair and complete consideration of the issues." *Melickian v. United States, supra,* 547 F.2d at 419.

See in accord, *In re January 1976 Grand Jury*, 534 F.2d 719, 730 n.11 (7th Cir. 1976); *Brown v. United States*, 465 F.2d 371, 372 (9th Cir. 1972).

■ Turning to the merits, Rosahn's first argument is that Judge Cooper erred in refusing to grant an adjournment. We disagree. An individual called before a grand jury to submit to photographing and fingerprinting and to provide handwriting exemplars and hair samples has no right under the Fifth Amendment to refuse to comply with the request, nor need the government make any showing that the request is reasonable. *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *In Re Liberatore*, 574 F.2d 78 (2d Cir. 1978); *United States v. Doe (Schwartz)*, 457 F.2d 895 (2d Cir. 1972), *cert. denied*, 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1973); see *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973).

■ Rosahn was represented at the oral argument below by Ms. Flood, an attorney whom she had chosen to represent her in the past and who continues to represent her at the present time. That Rosahn had not an opportunity to select lead trial counsel in the state court matter did not entitle her to an adjournment when the only reason for summoning her to appear was to obtain the items involved here, which she was obligated by law to provide. This is not a case where the witness was to be subjected to detailed questions about past activities as

---

1. The statutory requirement to dispose of these appeals within 30 days imposes substantial burdens on counsel who must, within a very short period of time, brief issues adequately, and on the court which must, sometimes in an even briefer period, decide issues that may be difficult. In this case, the notice of appeal did not indicate to the Clerk that the appeal was required to be heard with unusual haste. We advise counsel who appeal in the future from orders entered under this statute to state in the notice of appeal that the appeal is taken from an order of confinement under 28 U.S.C. § 1826. We request too the assistance of the United States Attorneys to see to it that the Clerk receives prompt notice that an appeal is covered by the statute. In that way, an expedited schedule can be arranged that will, unlike the situation in this case, allow the court more than one day to decide the appeal within 30-day period.

part of a grand jury investigation of those activities. Rosahn was represented by counsel who was competent enough to raise any meritorious ground for quashing the subpoena. Moreover, her request for an adjournment in no way suggested that Rosahn felt that Ms. Flood was not qualified to represent her.

■ Nor do we find any merit in Rosahn's argument that the grand jury had no right to the requested items because it was investigating the same matters as those underlying her state indictment. The federal government's right to prosecute an individual for federal crimes even after he has been tried under state law for an offense arising out of the same underlying transaction has long been established. *United States v. Wheeler*, 435 U.S. 313, 316–17, 98 S.Ct. 1079, 1082, 55 L.Ed.2d 303 (1978); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). The federal government's power to investigate federal crimes is not dependent upon whether a state is prosecuting the same individual for state crimes arising out of the same transaction. See *In re Grand Jury Proceedings (U.S. Steel-Clairton Works)*, 525 F.2d 151 (3d Cir. 1975).

■ Rosahn now makes several arguments against enforcement of the subpoena which were not raised below and are therefore waived. See *In re Liberatore*, 574 F.2d 78 (2d Cir. 1978). But even if they had been raised in a timely fashion, they are meritless. First, she argues that enforcement should be denied because there is a "strong likelihood that evidence acquired by the Federal Grand Jury will be used to support pending [state] criminal charges." (Br. at 13). The simple and conclusive answer is that secret grand jury materials may not be turned over to anyone, even state law enforcement officials, absent a court order, which may be granted only on a "showing of compelling and particularized need." *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24 at 28, (2d Cir. 1981).

■ Next Rosahn argues that probable cause did not exist to request the items. As we have already stated, however, a grand jury need not make any showing of reasonableness to justify compelling the production of the items requested here. Rosahn's argument that the grand jury request may have been based on evidence from an illegal wiretap is totally without any factual basis. Absent a "colorable basis" for such a claim, no inquiry by the District Court of the claim is required. *United States v. James*, 609 F.2d 36, 50–51 (2d Cir. 1979), *cert. denied*, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); *United States v. Yanagita*, 552 F.2d 940, 943 (2d Cir. 1977). Nor is there any support for Rosahn's assertions that the grand jury lacks the authority to investigate her under 18 U.S.C. § 1961 *et seq.* (the RICO statute) and that the subpoenaing of Rosahn is an attempt to harass her because of her political views.

■ Another argument not raised below is that the contempt proceeding was conducted in a manner that violated her right to due process because a full adversary hearing was not held, no witnesses were called, she was not informed of her right to call witnesses, and she was not offered an opportunity to address the court before issuance of the civil contempt order. On the undisputed facts, no "full adversary hearing" was required. Rosahn and her counsel affirmatively represented to the court that she would not comply with the order of the court and grand jury that she produce the items, which she was obligated by law to produce. 28 U.S.C. § 1826(a). Since she had a competent lawyer, there was no need for the court to make a special effort to inform her of her right to call witnesses. Nor is there any merit to the claim that Rosahn should have been offered an opportunity personally to address the court before issuance of the contempt order. This was an adjudication of civil, not criminal, contempt; the order that she be confined is designed to encourage her to obey the court's order, not to punish her. Her attorney was not precluded from asserting any colorable grounds for opposition to the proposed contempt order. Under the circumstances the due process clause does not en-

title her to a right of allocution with respect to the order. See F.R.Cr.P. 32(a)(1).

 Having determined that these foregoing claims are without merit, we nevertheless find it necessary to vacate the contempt entered below on the ground that the trial court's decision, over Rosahn's objection, to close the contempt proceedings to the public violated her due process rights under the Fifth Amendment. In *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), which struck down a secret criminal contempt trial as violative of due process, the Supreme Court stressed that at the heart of the due process clause is "[t]he traditional Anglo-American distrust for secret trials," which throughout history have been associated with "institutions [that] obviously symbolized a menace to liberty." *Id.* at 268–69, 68 S.Ct. at 505.

> "In view of this nation's historic distrust of secret proceedings [and] their inherent danger to freedom, . . . the guarantee [of public proceedings] has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." *Id.* at 270, 273, 68 S.Ct. at 507.

The safeguard of open proceedings not only represents "an effective restraint on possible abuse of judicial power," *id.* at 270, 68 S.Ct. at 506, but also reflects "the notion, deeply rooted in the common law, that 'justice must satisfy the appearance of justice.'" *Levine v. United States*, 362 U.S. 610, 616, 80 S.Ct. 1038, 1042, 4 L.Ed.2d 989 (1960) (quoting *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954)).

While the passages quoted from *In re Oliver* were written primarily with criminal trials in mind, it is significant that the contempt sentence overturned by the *Oliver* Court on the ground that the contempt proceeding below had been improperly closed to the public was a conditional jail sentence that would have terminated upon compliance with the trial court's order. Accordingly, the *Oliver* analysis was applied to invalidate a contempt sanction whose central characteristic—its conditional nature—

is typical of a *civil* contempt. See *United States v. Wendy*, 575 F.2d 1025, 1029 n.13 (2d Cir. 1978) (discussing distinction between civil and criminal contempt).

The foregoing principles were re-enforced by *Levine v. United States*, 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960), in which the Court, while upholding a criminal contempt conviction despite the secrecy of the proceedings because the defendant had not objected at trial to the exclusion of the public, nevertheless noted that under the due process clause of the Fifth Amendment:

> "Had petitioner requested, and the court denied his wish, that the courtroom be opened to the public before the final stage of these proceedings we would have a different case. Petitioner had no right to have the general public present while the grand jury's questions were being read. However, after the record of the morning's grand jury proceedings had been read, and the six questions put to petitioner with a direction that he answer them in the court's presence, there was no further cause for enforcing secrecy in the sense of excluding the general public. Having refused to answer each question in turn, and having resolved not to answer at all, petitioner then might well have insisted that, as summary punishment was to be imposed, the courtroom be opened so that the act of contempt, that is, his definitive refusal to comply with the court's direction to answer the previously propounded questions, and the consequent adjudication and sentence might occur in public." *Id.* at 618, 80 S.Ct. at 1043.

 The government argues that whatever may be the rule in a criminal contempt trial, there is no Fifth Amendment requirement that a *civil* contempt trial pursuant to 28 U.S.C. § 1826 be held in public. We are unpersuaded by this distinction. As we noted in *In re Di Bella*, 518 F.2d 955, 958–59 (2d Cir. 1975):

> "Admittedly . . . a proceeding [under § 1826] is basically civil in nature. The purpose of holding a witness in contempt is to coerce him to answer the grand

jury's questions, not to punish him for reprehensible conduct.... Yet, the burden of imprisonment is just as great, regardless of what we call the order that imposed it. It is this fact that fosters the need for procedural protection."

Given the burden that imprisonment imposes on an individual, a civil contempt trial that could result in an order of confinement carries with it the same concerns and purposes that lead to the requirement of a public trial in the criminal context, such as the need to assure accountability in the exercise of judicial and governmental power, the preservation of the appearance of fairness, and the enhancement of the public's confidence in the judicial system. See *Stamicarbon, N.V. v. American Cyanamid Co.*, 506 F.2d 532, 539–42 (2d Cir. 1974). Although a contempt trial may properly be closed to the public when substantive grand jury matters are being considered, no reason is advanced for preventing a defendant from having the rest of his trial in public.

Our conclusion that alleged civil contemnors, like criminal contemnors, have some right to a public proceeding is supported by and consistent with the trend in this and other Circuits to afford the same or similar procedural safeguards to persons charged with civil contempt as to those charged with criminal contempt. Thus we have held, along with other courts, that a witness subjected to a § 1826 civil contempt proceeding is entitled to counsel, *In re Di Bella*, 518 F.2d 955, 959 (2d Cir. 1975); *In re Kilgo*, 484 F.2d 1215, 1221 (4th Cir. 1973); *United States v. Sun Kung Kang*, 468 F.2d 1368 (9th Cir. 1972) (per curiam), and is entitled to the procedural regularities prescribed by Rule 42(b) of the F.R.Cr.P. for criminal contemnors, even though no parallel rule exists in the Federal Civil Rules. See, e.g., *In re Sadin*, 509 F.2d 1252 (2d Cir. 1975); *United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973); *In re Grand Jury Investigation*, 545 F.2d 385 (3d Cir. 1976). See generally, Note, Coercive Contempt and the Federal Grand Jury, 79 Colum.L.Rev. 735, 746 & n.89 (1979). We are satisfied that the

protection against unnecessary secret proceedings extends beyond the criminal context.[2]

We hold, therefore, that Rosahn's due process rights were violated when the trial court ordered the entire contempt proceeding closed over her objection. We need not and do not decide whether the due process clause extends the same degree of protection to civil contemnors who do not face imprisonment.

By motion filed January 21, 1982, the plaintiffs in *Clark, et al. v. United States, et al.*, 78 Civ. 2244, which is pending in the Southern District of New York, ask leave to intervene in the present proceedings. We find no merit in the application and accordingly it is denied.

The contempt order is hereby vacated and the district court is instructed, in accordance with *Levine v. United States*, 362 U.S. 610, 618, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960), to hold a public contempt proceeding, excluding the public only to the extent necessary to protect the secrecy of the grand jury process.

---

**2.** One court has held that to comport with due process requirements certain quasi-judicial administrative proceedings "that involve important constitutional rights" must "be open to the press and the public." *Fitzgerald v. Hampton*, 467 F.2d 755, 763, 766 (D.C.Cir.1972).