**In the Matter of Yaasmyn D. FULA, Appellant.**

**No. 813, Docket 82–6001.**

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1982.
Decided Feb. 17, 1982.

**280**

Martin R. Stolar, New York City (Lewis Myers, Jr., Chicago, Ill., Jennifer A. Garvey, Linda Bakiel, New York City, of counsel), for appellant.

Mark F. Pomerantz, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty. for the S.D.N.Y., Stacey J. Moritz, Jane W. Parver, Robert S. Litt, Asst. U. S. Attys., New York City, of counsel), for the U. S.

Before MESKILL and CARDAMONE, Circuit Judges, and HOLDEN,* District Judge.

MESKILL, Circuit Judge:

This expedited appeal involves an order of the United States District Court for the Southern District of New York, Bonsal, J., finding Yaasmyn D. Fula in civil contempt for refusing to comply with a prior order of the court requiring her to supply hair samples and handwriting exemplars to a federal grand jury. While we find Fula's other claims without merit, we are constrained to vacate her contempt citation because of the district court's failure to conduct a contempt proceeding open to the public. *In Re Grand Jury Proceedings Involving Eve Rosahn*, 671 F.2d 690, 696 (2d Cir. 1982) (hereinafter *Rosahn*).

### BACKGROUND

Fula is presently employed as a paralegal by the Bronx Legal Services Corporation and as a word processor operator in a private New York law firm. Since 1976, she has also worked as a paralegal with the National Task Force for Cointelpro Litigation and Research ("Task Force"), described

---

* The Honorable James S. Holden, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

by Fula as a collection "of lawyers, paralegals, and law students who are attempting to expose the racism and hypocrisy of the policies of the United States Government and, in particular, its law enforcement intelligence operations directed against Black organizations." D.Ct. op. at 1–2.[1] She claims that while working for the "Task Force she [has] interviewed many clients who were targets of Government investigations of alleged 'Black Nationalist hate groups,'...."[2] *Id.* at 2.

This case arises from much the same factual setting as *Rosahn.* On October 20, 1981, an attempted robbery of a Brinks armored truck occurred in Nanuet, New York. One guard and two police officers were killed during the incident and subsequent escape.

Several pieces of evidence linked Fula to these events. One of the suspected robbers was Nathaniel Burns, a former member of the Black Panther Party, *see* Brief for Appellant at 9. Fula has stated that Burns and an accomplice stayed at her Bronx apartment for an unspecified period following the robbery attempt.[3] When Burns was captured and the accomplice killed in a shoot-out with police on October 23, they were driving a car registered to Fula.[4] A bullet extracted from the accomplice's body was traced to the gun of one of the police officers killed during the Brinks incident.

In addition, a third suspect in the Brinks robbery, Anthony LaBorde, was a co-worker of Fula at Bronx Legal Services. Thus, when a federal grand jury was empanelled in the Southern District of New York to investigate the robbery and to "question whether it was a part of a larger pattern of criminal activities[,]" D.Ct. op. at 4, Fula was subpoenaed to appear.

The grand jury ordered that Fula, in addition to testifying, produce physical evidence including handwriting exemplars and hair samples.[5] Following several delays caused by her attorney's involvement in out-of-state litigation, Fula appeared before the grand jury and refused to produce the subpoenaed evidence. The government moved before Judge Gerard Goettel, then presiding as the Part I judge, to compel Fula to produce the handwriting and hair samples. Fula cross moved to quash the subpoena on a variety of grounds, including that it violated her rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Thirteenth Amendments to the United States Constitution.[6]

On November 30, Judge Goettel denied Fula's motion to quash the subpoena and ordered her to appear before the grand jury on December 2 and to produce the handwriting and hair samples at that time. Judge Goettel issued a ten-page opinion on

1. References to the district court's opinion are to an unpublished opinion by Judge Goettel denying Fula's motion to quash the subpoena and ordering her to produce handwriting exemplars and hair samples. This opinion is reproduced in the Joint Appendix on appeal at pages 18–29.

2. These groups include the Black Panther Party, the Black Liberation Army, and the Republic of New Afrika. D.Ct. op. at 2 n.1.

3. Fula allegedly also indicated to law enforcement officers at one point that she had been Burns' girlfriend for several years. D.Ct. op. at 4. Fula "strenuously" denies this assertion in her brief on appeal. Brief for Appellant at 9.

4. Following the shoot-out, Fula, accompanied by counsel, voluntarily approached law enforcement authorities and consented to be interviewed. She also consented to being photographed and fingerprinted at that time, and consented in writing to a search of her apartment.

5. Fula was actually served with two subpoenas, one requiring her to testify and the other a subpoena *duces tecum* requiring her to supply physical evidence. In addition to the hair and handwriting samples, the subpoena *duces tecum* also required Fula to produce photographs and fingerprints. These latter items were dropped from the subpoena when it was learned that Fula had previously furnished each voluntarily.

Fula has also stated that she would refuse to testify. Her refusal to do so is not at issue in this appeal, however.

6. Fula also moved to suppress certain documents seized from her apartment pursuant to a search warrant and sought access to statements she had made to Federal Law Enforcement agents. She has not pursued these claims on appeal.

December 2 explaining his reasons for rejecting Fula's claims. *See* note 1, *supra.* After Fula appeared before the grand jury later that day and again refused to comply with the subpoena, she was returned to Part I, where Judge Dudley Bonsal was presiding. The government requested that the courtroom be cleared of everyone except Fula and her counsel, Lewis Myers, because the matter before the court was ancillary to a grand jury proceeding. Myers indicated that the other persons in the courtroom were attorneys and a paralegal who had accompanied him and requested that they be permitted to stay. Judge Bonsal refused the request in order to protect the secrecy of the grand jury proceedings. Myers then asked that one attorney who had assisted him in preparing the case, Marty Copeland, be permitted to stay. The government stated no objection, but asked that Copeland file a notice of appearance. Copeland, apparently because of her employer's policies, declined to file a notice of appearance and left the courtroom.

With the courtroom cleared, the grand jury minutes containing Fula's refusal to produce the subpoenaed evidence were read. The following colloquy then occurred:

> [THE GOVERNMENT]: Your Honor, at this point, for the record, it can become an open proceeding. What has taken place before the grand jury must remain sealed, but at this point if your Honor is going to inquire of Miss Fula if she will persist in her refusal to comply with Judge Goettel's order, from this moment on it can be an open proceeding because that is now ancillary to Judge Goettel's order.

> MR. MYERS: Judge, I would like to invite counsel back in. I think that the matters that were secret—

> THE COURT: Wait a minute. We are building this up and I don't want to build it up any more than it already is.

J.App. at 42. Without reopening the courtroom, Judge Bonsal asked whether Fula would comply with the subpoena. When Fula's counsel responded negatively, Judge Bonsal held her in civil contempt pursuant to 28 U.S.C. § 1826(a),[7] and ordered her confined until she complied with the subpoena or the grand jury's term expired.

On January 27, 1982, this Court granted Fula's motion for bail pending disposition of this appeal and remanded for the purpose of setting the conditions for release.

## DISCUSSION

■ Before considering the merits of this appeal, we must be satisfied that we still have jurisdiction in this matter. Section 1826 of Title 28 U.S.C. authorizes a district court to issue a civil contempt order, and states in pertinent part, "[a]ny appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal," 28 U.S.C. § 1826(b). Fula filed her notice of appeal on December 28, 1981 and thirty days have since passed. Nevertheless, we recently held in *Rosahn* that "the 30-day rule does not affect our jurisdiction during the period when a contemnor is not confined pursuant to the contempt order." *Rosahn,* 671 F.2d at 694.

---

7. Section 1826 provides:

   (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
   
   (1) the court proceeding, or

   (2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

   (b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

Since we granted Fula's motion for bail on January 27, 1982, within the thirty-day period, we are satisfied that our jurisdiction is unimpaired.

Fula raises three challenges to her contempt citation. She asserts that she has "just cause" to defy the subpoena because the grand jury lacks authority to investigate her under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (RICO). Second, she charges that Judge Bonsal denied her due process by conducting the entire contempt proceeding in a closed courtroom. Finally, Fula contends that Judge Bonsal improperly denied her the opportunity to raise defenses at the contempt hearing.[8]

■ Fula's first argument may be briefly dismissed. It is well settled that a recalcitrant witness has no standing "to take exception to the jurisdiction of the grand jury or the court over the particular subject matter that is under investigation." *Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919); *see United States ex rel. Rosado v. Flood*, 394 F.2d 139, 141 (2d Cir.), *cert. denied*, 393 U.S. 855, 89 S.Ct. 111, 21 L.Ed.2d 124 (1968). We also observe that this Court addressed an identical claim in *Rosahn*, albeit in dicta, stating:

> Nor is there any support for Rosahn's assertions that the grand jury lacks the authority to investigate her under 18 U.S.C. §§ 1961, *et seq.* (the RICO statute) and that the subpoenaing of Rosahn is an attempt to harass her because of her political views.

671 F.2d at 695. These comments seem equally applicable to Fula, who was subpoenaed by the same grand jury as Rosahn. However, in light of our holding that Fula lacks standing to raise this point, we make no comment on the use of the RICO statute in grand jury investigations of this nature.

■ We must agree, however, with Fula's second claim, that Judge Bonsal denied her due process by failing to reopen the contempt proceeding to the public following the reading of the grand jury minutes and after Fula's counsel indicated his desire to consult with his colleagues.[9] *Id.* at 696. Accordingly, we vacate Fula's contempt citation and remand to the district court with instructions to hold a public contempt proceeding, excluding the public only to the extent necessary to protect the secrecy of the grand jury process.

■ We address Fula's final argument, that Judge Bonsal improperly barred her from raising defenses to the subpoena at the contempt proceeding, in order to give the district court guidance on remand. A recalcitrant witness is certainly entitled to an opportunity to demonstrate just cause for refusing to comply with the grand jury subpoena and a reasonable time to prepare a defense. *In re Sadin*, 509 F.2d 1252, 1255 (2d Cir. 1975). On the other hand, the witness must not be allowed to delay the grand jury process by waging a "series of minitrials challenging the reasonableness of the government's efforts to obtain [physical evidence] or the relevance of such exemplars to the government's case." *United*

---

**8.** Fula also intimates that Judge Bonsal's decision to close the courtroom had the effect of denying her effective assistance of counsel because an attorney who had assisted in preparing her defense was excluded from the room. Brief for Appellant at 21. This argument has no record support inasmuch as Fula's chosen counsel, Lewis Myers, *see* J.App. at 3, was present in the courtroom at all times.

**9.** In *Rosahn*, the district court failed to reopen the contempt proceeding over the contemnor's objection. We therefore had no need to consider whether a contemnor's failure to object might constitute a waiver of the right to a public contempt proceeding. *See Levine v.*

*United States*, 362 U.S. 610, 616–20, 80 S.Ct. 1038, 1042–44, 4 L.Ed.2d 989 (1960).

In the case before us, the *government* suggested to the district court that the contempt proceeding be reopened to the public. Fula's counsel immediately agreed, stating his desire to open the proceeding to his colleagues, who had been excluded as members of the public. Certainly under these circumstances, it cannot be said that Fula "waived" her right to an open contempt proceeding. We express no view on whether a contemnor's failure to object to a closed contempt proceeding under different circumstances would constitute a waiver.

*States v. Braughton,* 520 F.2d 765, 767 (9th Cir. 1975). Our task is to strike a reasonable balance between these competing interests.

 Fula chose to attack the subpoena in this case affirmatively by motion to quash. In doing so, she had from November 4, 1981 until November 30, 1981, when Judge Goettel ordered her to comply with the subpoena, to raise her grounds for defying the grand jury. Indeed, Fula filed with the court a lengthy legal memorandum and a panoply of affidavits during that time. We see no reason why Fula should have a second opportunity to raise defenses which could reasonably have been included in her motion to quash. To the extent she chose not to pursue these defenses, they are waived. *See In re Liberatore,* 574 F.2d 78, 82 (2d Cir. 1978).

This is not to say, however, that Fula will be barred on remand from demonstrating "just cause" to defy Judge Goettel's order that she comply with the subpoena. She may proffer any defenses which, for reasons she will have to show, could not have been raised in her motion to quash.

Contempt citation vacated. Remanded.