In re Grand Jury Witness Russell
**BONGIORNO, Appellant.**

**No. 698, Docket 82–6289.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 29, 1982.
Decided Dec. 2, 1982.

H. Elliot Wales, New York City, for appellant.

Ruth A. Nordenbrook, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Mary McGowan Davis, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for the U.S.

Before LUMBARD, FRIENDLY and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

■ Russell Bongiorno appeals from an order of the United States District Court for the Eastern District of New York, Mark A. Costantino, *Judge,* adjudging him to be in contempt of court pursuant to 28 U.S.C. § 1826 (1976) for his refusal to answer questions posed by a federal grand jury after being ordered to do so by the court. Appellant challenges the contempt order on the grounds that (1) the hearing at which his contempt was adjudicated was not fully open to the public, and (2) the evidence was insufficient to support a finding of contempt. Finding no merit in appellant's contentions, we affirm the order of contempt.[1]

---

1. Although neither party has raised any question as to the composition of the panel hearing this case, we note at the outset our view that the panel, which includes Senior Judges Lumbard and Friendly, consists of three "judges of [this] court" within the meaning of 28 U.S.C. § 46(b) as recently amended. Section 103(b) of the Federal Courts Improvement Act of 1982 (the "Act") amended 28 U.S.C. § 46(b) to require that appellate panels in each circuit consist of three judges, "at least a majority of whom shall be judges of that court":

> In each circuit the court may authorize the hearing and determination of cases and controversies by separate panels, each consisting of three judges, at least a majority of whom shall be judges of that court, unless such judges cannot sit because recused or disqualified, or unless the chief judge of that court certifies that there is an emergency including, but not limited to, the unavailability of a judge of the court because of illness.

28 U.S.C.A. § 46(b) (West Supp. 1 1982). Given the purpose and history of § 103(b), and Congress's use of narrower language in other sections of the Act, we construe the phrase "judges of that court" to include the court's senior judges.

Congress's purpose in enacting § 103(b) was to prevent the instability and unpredictability in the law of a circuit that could result if many panels were composed principally of judges from "outside" the circuit. *See, e.g.,* S.Rep. No. 275, 97th Cong., 1st Sess. 19 (1981); 125 Cong.Rec. S12,143 (daily ed. Sept. 7, 1979) (statement of Senator Dole). Senior circuit judges, of course, normally have great experience in the law of the circuit, and their presence on appellate panels within the circuit is wholly consistent with Congress's purpose of promoting the stability of circuit law. We believe, therefore, that Congress intended the phrase "judges of that court," as used in § 46(b), to include the court's senior judges.

This interpretation is reinforced by the fact that in other sections of the Act Congress took pains to use the phrase "judges in regular active service," *e.g.,* §§ 201, 202 and 204 of the Act, when it wished to distinguish such judges

## BACKGROUND

On October 19, 1982, the district court signed an order granting Bongiorno immunity with respect to an ongoing grand jury investigation of the activities of one Louis Attanasio. On October 26, 1982, appellant appeared before the grand jury. During approximately two hours of questioning, appellant answered some questions with respect to his own activities; but when questioned as to activities of or relating to Attanasio, appellant generally stated that he could not remember. He answered "I don't recollect," or its equivalent, more than 50 times.

Because of these responses, the government moved pursuant to 28 U.S.C. § 1826(a)[2] to have Bongiorno held in contempt of the court's October 19 order. After hearing excerpts from the grand jury proceedings, the court indicated that it did not believe appellant's answers were candid. The court ruled that appellant must, in light of the grant of immunity, answer the questions forthrightly, and it gave him an opportunity to return to the grand jury to do so that day. The court stated that if appellant persisted in his refusals to answer, the court would determine whether or not he was in contempt.

Appellant returned to the grand jury, and the Assistant United States Attorney repeated a number of the questions asked earlier. Again, in response to some 30 questions, appellant denied recollection, and the government therefore renewed its application before the court. The court heard excerpts from the second grand jury session and found the witness to be in contempt. Appellant's request for time to research the law was opposed by the government and denied by the court, and appellant was remanded to the custody of the marshal.

By October 29, 1982, however, the government apparently had had second thoughts about the denial of appellant's request for time to prepare a defense to the contempt charge. The government therefore moved to have appellant released from custody pending further proceedings and to allow appellant a reasonable period of time to prepare for a contempt hearing. The court granted Bongiorno's release and ordered the parties to reappear on November 3, 1982 for a new contempt proceeding.

On the eve of the November 3 hearing, Bongiorno applied for an adjournment because of his wife's impending parturition, supporting his request with a doctor's letter stating that birth could occur at any time. At the outset of the November 3 hearing,

---

from senior judges, *e.g., id.* § 205. *See* 28 U.S.C. § 46(c), as amended. Similarly, the phrase "judges in regular active service" was used by the Chairman of the Senate Judiciary Committee to distinguish active judges from circuit judges generally. *See, e.g.,* 125 Cong. Rec. S12,129 (daily ed. Sept. 7, 1979) (statement of Senator Kennedy: "The bill requires that Federal appellate panels be composed of at least three judges, at least a majority of whom shall be judges of the circuit court, and that the presiding judge be a judge of that court in regular active service. The bill thus discourages any unnecessary borrowing of judges and promotes stability and predictability by requiring a majority of each panel to be composed of judges of the circuit court."); *see also id.* at S12,143 (statement of Senator Dole). Although there were some conflicting interpretations of § 103(b) offered by witnesses who testified during hearings on the Act, we are convinced by the language and purpose of the Act that Congress intended the phrase "judges of that court" in § 46(b) to include the court's senior judges.

**2.** 28 U.S.C. § 1826(a) (1976) provides as follows:

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

when appellant's counsel stated his request for an adjournment, the following colloquy ensued:

Ms. NORDENBROOK [Assistant United States Attorney]: I'm sorry, I know the witness' wife was brought here to impress the Court with her current status—

MR. WALES [counsel for appellant]: That's not a nice statement.

Ms. NORDENBROOK: She shouldn't be in this room.

MR. WALES: This is a public room.

THE COURT: No, this is a private proceeding.

MR. WALES: The Second Circuit has held that upon the application of the witness—

Ms. NORDENBROOK: That's correct, [citing to *In re Rosahn,* 671 F.2d 690 (2d Cir.1982) ].

MR. WALES: They reversed Judge Cooper and somebody else. That's not a very nice statement—

THE COURT: The application is in reference to her, I suppose?

MR. WALES: If I didn't bring her, Ms. Nordenbrook would say "Aha, you didn't bring her."

(Tr. 3–4.)

There followed argument on appellant's application for an adjournment, which was denied, and on the merits of the government's contempt motion. Toward the end of the session, appellant took the witness stand in order to allow the court to assess his credibility. When appellant asked to confer with his counsel, the court declared a recess until the afternoon, and the following colloquy occurred:

MR. WALES: Thank you, your Honor. I would like to order the minutes.

THE COURT: You can't, this is a closed hearing.

(Pause)

MR. WALES: May I make the request I want a public hearing? I thought the request in the beginning was for public hearing.

THE COURT: Your request was let the wife stay in here.

MR. WALES: My request is for a public hearing pursuant to the U.S. Constitution, pursuant to case law of the Second Circuit.

THE COURT: Why don't you go open the doors?

MR. WALES: Why don't I?

THE COURT: 2:30 we'll have a public hearing. Everybody wants to come in, they can hear it on the witness stand at that time. You'll have a public hearing; that's what you want, that's what you get. 2:30. He'll be placed on the witness stand, asked the questions. Then we'll determine his credibility when he faces me.

(Tr. 28–29.)

During the afternoon session, in which Bongiorno testified, the courtroom was open to the public. After hearing appellant's answers to a number of questions, the court found Bongiorno to be in contempt of court and directed that he be held in custody for the remainder of the grand jury's term,[3] or until he decides to testify. In a written memorandum the court found that

Bongiorno was asked a series of questions regarding his relationship with the individual named as the target of the Grand Jury investigation. Bongiorno testified he had known this individual for five or six years and had visited his social club "many times." When the questioning turned to Bongiorno's recollection of ever discussing or hearing discussed, gambling or loansharking activities, in the presence of the proprietor of the social club, his answers suddenly became characterized by a lack of memory.... The same sudden lapse of memory seemed to strike when Bongiorno was questioned regarding his relationship with a man named "Harry." When the government attempted to "refresh" his memory by showing him a series of photographs of himself and "Harry" together, Bongiorno was at first unable to identify himself in the photographs.

---

**3.** The term of the grand jury is due to expire in August 1983.

District court memorandum dated November 3, 1982, at 1–2 ("November 3 Memorandum"). The court concluded as follows:

> The court has read the Grand Jury minutes, noting Bongiorno's systematic loss of memory regarding the areas previously discussed. The court has further noted the Government's "unsuccessful" attempt to "refresh" Bongiorno's memory by showing him a series of photographs. Finally, the court has observed the demeanor of Bongiorno on the witness stand, observing his recalcitrance and obvious reluctance to answer the questions put to him. The pattern of Bongiorno's answers indicate [*sic*] to this court "by clear and convincing evidence," . . . a determined effort to avoid testifying about anyone other than himself before the Grand Jury.

*Id.* at 3 (citation omitted). Bongiorno remains incarcerated.

On appeal Bongiorno argues (1) that the November 3 proceeding violated his right to due process because the morning session of the hearing was only partially public, and (2) that the evidence in the record was insufficient to support the district court's finding of contempt. For the reasons below, we affirm the order of the district court.

## DISCUSSION

### A. *Public Hearing*

■ Alleged civil contemnors, like criminal contemnors, have "some right to a public hearing." *In re Rosahn,* 671 F.2d 690, 697 (2d Cir.1982). The right "derives from the Due Process Clause," *Levine v. United States,* 362 U.S. 610, 616, 80 S.Ct. 1038, 1042–43, 4 L.Ed.2d 989 (1960), and exists to the extent that it does not undermine the secrecy of grand jury proceedings. *Id.* at 618, 80 S.Ct. at 1043; *Matter of Fula,* 672 F.2d 279, 283 (2d Cir.1982). Thus, while a grand jury witness has no right to have the general public present while a court puts to him the grand jury's questions, he does have the right to insist that the final adjudication of his contempt occur in public. In *Levine v. United States, supra,* a criminal

contempt proceeding, the Court stated that, following the closed-courtroom reading of the grand jury's questions,

> petitioner then might well have insisted that, as summary punishment was to be imposed, the courtroom be opened so that the act of contempt, that is, his definitive refusal to comply with the court's direction to answer the previously propounded questions, and the consequent adjudication and sentence might occur in public.

362 U.S. at 618, 80 S.Ct. at 1043–1044. The Court continued, however, that exclusion of the public "is not to be deemed contrary to the requirements of the Due Process Clause without a request having been made to the trial judge to open the courtroom at the final stage of the proceeding." *Id.* at 619, 80 S.Ct. at 1044. Applying these principles to an adjudication of civil contempt, we have held that the grand jury witness may properly request that the courtroom be open to the public for so much of the contempt trial as is not devoted to a consideration of substantive grand jury matters, and that it is error to refuse such a request. *Matter of Fula, supra,* 672 F.2d at 283; *In re Rosahn, supra,* 671 F.2d at 697.

■ Turning to the present case, we conclude that Bongiorno's due process rights were not violated by such exclusion of the public as occurred. Although Bongiorno's counsel has argued that his request for the admission of the general public to the courtroom at the start of the November 3 hearing was "crystal clear," we find the contrary to be reflected in the record. As the colloquy quoted above reveals, the matter was first raised in the context of the government's suggestion that Bongiorno's wife should not be present (perhaps a reference to her state of parturient dilation). Then, following the comments of counsel for both sides recognizing that the courtroom should be open if the witness so requests, the court asked, "The application is in reference to her [*i.e.,* Mrs. Bongiorno], I suppose?" (Tr. 3–4.) Bongiorno's counsel made a reply that appears to have been nonresponsive, but that nevertheless fo-

cused squarely on Mrs. Bongiorno and did not mention the public in general; and it appears that the court construed this as an affirmative reply to its question, for at the end of the morning session when Bongiorno's counsel stated that he thought he had asked to have the courtroom completely open, the court stated, "Your request was let the wife stay in here." (Tr. 28.) The district court's interpretation of Bongiorno's counsel's reply to its inquiry was entirely reasonable, and we conclude that Bongiorno did not, prior to the end of the morning session, request that the public be admitted.

When the request for a public hearing was made, it was granted, and all subsequent proceedings were conducted in a courtroom open to the public. Accordingly, we conclude that Bongiorno's right to a public hearing was not violated.

B. *Bongiorno's Recalcitrance*

■ A refusal to testify by a witness who has been ordered to do so after waiver of the Fifth Amendment privilege or under a grant of immunity constitutes contempt of court, *see Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958), and may subject the witness to incarceration pursuant to 28 U.S.C. § 1826, *see* note 2 *supra.* Courts have long construed false assertions of inability to answer—whether attributed to a lack of knowledge or to a lack of memory—as refusals to answer. *Matter of Battaglia*, 653 F.2d 419, 422 (9th Cir.1981); *Richardson v. United States*, 273 F.2d 144, 147 (8th Cir.1959); *United States v. Appel*, 211 F. 495 (S.D.N.Y.1913) (L. Hand, J.).

■ If the government seeks to have a witness held in civil contempt for the false assertion of an inability to remember, it has the burden of proving the falsity of the witness's responses. To carry this burden, the government must "establish[] by clear and convincing evidence that the witness' claimed inability to remember is not credible." *Matter of Battaglia, supra*, 653 F.2d at 423; *cf. Stringfellow v. Haines*, 309 F.2d 910, 912 (2d Cir.1962). Such evidence may include extrinsic proof, such as tape recordings, documents, or photographs; or it may

be found in the witness's demeanor and his answers, if the pattern and substance of those answers convinces the court that the answers are inherently incredible.

■ Viewing the record within this framework, the district court concluded that the government had shown by clear and convincing evidence that "Bongiorno's answers indicating a lack of memory [were] evasive and false and constitute[d] a refusal to testify[,] in contempt of the court's order." November 3 Memorandum at 2. The court noted Bongiorno's "pattern" of "sudden lapse[s] of memory" with respect to discussions involving or relating to the target of the grand jury's investigation. Further, the court noted that Bongiorno's responses to the government's efforts to "refresh" his recollection by showing him photographs intensified the impression that his answers were intended to be evasive. For example, when shown a photograph of several persons including himself, Bongiorno at first stated that he recognized no one in it. He finally conceded that he "might" be one of the men apparently coming out of Attanasio's club, and that the man behind him in the picture might be one "Harry." But even while viewing this photograph, Bongiorno stated that he could not recall whether he had ever been to the club with Harry. Nor, looking at a photograph showing himself poised at the driver-side door to his car outside the club with keys in his hand, and showing Harry poised at the passenger-side door of the car, could Bongiorno recall whether he had ever gone to the club with Harry or had ever driven Harry anywhere from the club. Having reviewed the testimony and observed Bongiorno's demeanor on the witness stand, the court concluded that Bongiorno's purported lack of memory was "systematic" and that his answers simply were not credible.

We conclude that the evidence was sufficient to support the district court's findings. We therefore affirm the order of contempt.