**In re GRAND JURY PROCEEDINGS.**

**A GRAND JURY WITNESS, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 418, Docket 85–6258.**

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1985.

Decided Nov. 14, 1985.

Peter J. Avenia, Mark B. Gombiner, Gombiner & Avenia, New York City, for appellant.

David E. Brodsky, Asst. U.S. Atty., S.D. N.Y. (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., David N. Lawrence, Warren Neil Eggleston, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, LUMBARD and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Appellant Ralph Hubert "Sonny" Barger is a member of the Hells Angels Motorcycle Club ("HAMC"). Judge Leisure held Barger in contempt for refusing to answer certain questions before a grand jury that is investigating criminal activity by members and associates of the HAMC. Barger claims that the First Amendment creates a privilege against his testifying before the grand jury about the membership, funding, and organizational structure of the HAMC. Because Barger was incarcerated for more than thirty days before this appeal was decided, in contravention of 28 U.S.C. § 1826(b) (1982), a question of our authority to decide this appeal arises. We conclude, however, that Section 1826(b) is not jurisdictional and affirm the district court's order of civil contempt.

## BACKGROUND

This case arises out of an investigation by the Federal Bureau of Investigation into allegedly illegal activities of members and associates of the HAMC. Thus far approximately sixty individuals, including nineteen in the Southern District of New York, have been indicted on the basis of the FBI's investigation. A grand jury in that district is continuing the investigation and is currently hearing evidence concerning possible violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and the Continuing Criminal Enterprise ("CCE") statute, 21 U.S.C. § 848.

Barger, who is not a target of the investigation, was subpoenaed to appear on July 15 before the grand jury. Prior to that date, he moved to quash or limit the subpoena on two grounds. First, he challenged the legality of certain electronic surveillance. Second, he contended that the subpoena violated the First Amendment right of freedom of association. Judge Leisure found, however, that Barger had failed to make a prima facie showing that he had been the subject of any illegal electronic surveillance. He also ruled that Barger's First Amendment claims should be asserted on a question-by-question basis.

Barger appeared before the grand jury and testified extensively under a grant of statutory immunity. On the second day of testimony, August 26, however, Barger refused on First Amendment grounds to answer the following thirteen questions:

(1) What, if any, offices have you held in connection with the Hell's Angels Motorcycle Club?

(2) When was the Club founded?

(3) How many chapters are there in the Club?

(4) What is the "Filthy Few"?

(5) Does the Club have a national treasury?

(6) What does "Dequiallo" mean?

(7) Is there any connection between the Oakland Chapter of the Club and the New York Chapter of the Club? And by connection, I mean, do you have any members in common, or do you communicate on a regular basis?

(8) Does the New York City Chapter of the Hell's Angels pay any money to the Oakland Chapter?

(9) What clubs does the Hell's Angels Motorcycle Club consider to be their (sic) chief rivals?

(10) Isn't it a fact that certain animosity or antagonism exists between the Hell's Angels and other motorcycle clubs?

(11) Does the Hell's Angels Motorcycle Club employ anybody on a paid full-time basis?

(12) Are Club members required to pay dues to the Club, and if so, how much are the dues?

(13) Isn't it a fact that part of the activities of the Club are financed through the distribution of methamphetamine?

Judge Leisure heard argument that day on Barger's First Amendment claim and directed him to answer each of the thirteen questions. Barger returned to the grand jury, but continued to refuse to answer the questions. Later in the day of August 26, Judge Leisure found Barger in contempt under 28 U.S.C. § 1826(a).

Barger then moved for a stay pending appeal. The district court denied this motion but granted a stay based on Barger's medical condition. He had contracted throat cancer several years earlier and had undergone a laryngectomy and several follow-up operations. Another operation being scheduled for August 28, 1985, the district court stayed enforcement of its contempt order pending completion of the medical treatment. Barger's doctors decided to proceed with a non-surgical procedure, however, which required continuing medical supervision until September 15. Meanwhile, Barger filed a notice of appeal on September 4. His surrender was further postponed until a panel of this court denied his motion for bail pending appeal on September 17. Barger entered custody on September 19. This appeal was heard on October 3. On Friday, October 18, Barger's counsel informed us for the first time that 28 U.S.C. § 1826(b) required a decision by that day. We affirmed on Monday, October 21, with an order stating that an opinion would follow. Barger remains incarcerated.

## DISCUSSION

Before reaching the merits of this appeal, we must address a question pertaining to our authority to hear this case. 28 U.S.C. § 1826(b) states in relevant part, "Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal."

Our prior decisions have made clear that, notwithstanding its language, this provision is implicated only during the time a contemnor is actually confined. *In re Rosahn*, 671 F.2d 690, 694 (2d Cir.1982) ("[T]he 30-day rule does not affect our jurisdiction during the period when a contemnor is not confined pursuant to the contempt order."); *In re Fula*, 672 F.2d 279, 282–83 (2d Cir.1982). The effect of Section 1826(b), therefore, is that, once an appeal has been filed, it prohibits the incarceration of a contemnor for a period of more than thirty days unless of course the order of incarceration is affirmed within that time.

This appeal was filed on September 4, at which time appellant was free. His incar-

ceration began only on September 19, thus triggering Section 1826(b)'s 30-day period. Although these dates were mentioned in the briefs, neither party saw fit to bring the need for a prompt decision under Section 1826(b) to our attention until appellant's counsel raised the issue on Friday, October 18, the thirtieth day of Barger's incarceration. We issued an order affirming the contempt order on Monday, October 21, the earliest practicable date in light of the panel's geographic dispersal and the intervening weekend. Our order stated that an opinion would follow.

Unlike the contemnors in *Rosahn* and *Fula*, appellant was incarcerated for more than thirty days while his appeal was pending. We must thus decide whether the 30-day rule of Section 1826(b) is jurisdictional, and whether the expiration of that period terminates our power to decide this case. In *Rosahn*, we reviewed the legislative history of Section 1826, and stated by way of dictum: "The statute was designed to assure prompt release from custody of meritorious contemnors rather than to deprive the trial or appellate court of jurisdiction in the matter, which would bar consideration of contempt-related appeals after the 30-day period had expired." *Rosahn*, 671 F.2d at 694. The soundness of this interpretation is apparent. There is no reason why a contemnor's counsel should not inform the clerk and the panel hearing a particular case of the applicability of the 30-day rule. To hold that we lose jurisdiction after the passage of thirty days in the absence of such notice would actually create the perverse incentive for a contemnor's counsel to omit any mention of this time limit. Moreover, Section 1826(b) calls for the disposition of such appeals "as soon as practicable," and compliance with that direction will be enhanced by a rule which encourages the parties to give us appropriate notice as soon as possible.

■ We therefore hold that the protection afforded contemnors by the 30-day provision is not jurisdictional. However, where the applicability of Section 1826(b) is brought to the panel's attention at or after the expiration of the 30-day period, the court should either decide the merits of the appeal immediately or release the contemnor pending a decision. In the instant case, we issued our judgment deciding the appeal as soon as practicable after the communication from Barger's counsel.

■ We are compelled to add, however, that we do not believe that the entire burden of notifying the panel hearing an appeal to which Section 1826(b) is applicable ought to fall upon the contemnor. Rather, we believe that the burden should be shared by the government. So far as the best method of affording notice to this court is concerned, we now believe it most efficient for the parties to notify the clerk by letter as soon as practicable and request that the letter be transmitted to the panel hearing the appeal. This will allow an appropriate scheduling order to be entered and will ensure proper notice in cases such as the present one where the period of incarceration does not begin until after the notice of appeal has been filed.[1]

Turning to the merits, Barger claims that his right to freedom of association under the First Amendment shields him from giving testimony concerning the membership, funding, and organizational structure of the HAMC. The standards to be applied to Barger's claim are well established. First, the interests of the state must be "compelling," *Bates v. City of Little Rock*, 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960), and able to survive "exacting scrutiny," *Buckley v. Valeo*, 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976) (*per*

---

1. Our prior indication that an appropriate statement in the notice of appeal would suffice, *Rosahn*, 671 F.2d at 694 n. 1. risks oversight in the clerk's office and is not feasible in a case in which the period of incarceration begins after the notice of appeal has been filed.

*curiam*), as to whether they are "sufficiently important to outweigh the possibility of infringement." *Id.* at 66, 96 S.Ct. at 657. Second, there must be some "substantial relation" between the governmental interest and the information required to be disclosed. *Id.* at 64, 96 S.Ct. at 656; *Gibson v. Florida Legislative Committee*, 372 U.S. 539, 546, 83 S.Ct. 889, 893, 9 L.Ed.2d 929 (1963). Third, "justifiable governmental goals may not be achieved by unduly broad means having an unnecessary impact on protected rights of speech, press, or association." *Branzburg v. Hayes*, 408 U.S. 665, 680–81, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972). Finally, an otherwise justifiable investigation may be curtailed when a showing is made that a particularized harm such as harassment or reprisals may result from the disclosure of associational relationships. *Buckley*, 424 U.S. at 74, 96 S.Ct. at 661.

■ The analysis utilized in *Branzburg* is directly relevant to this case. As to the first factor, the existence of a "compelling" governmental interest, that case stated that "the investigation of crime by the grand jury implements a fundamental governmental role of securing the safety of the person and property of the citizen." 408 U.S. at 700, 92 S.Ct. at 2666.

With regard to the second factor, the presence of a "substantial relation" between the information sought and the subject of compelling state interest, the *Branzburg* Court made two relevant observations. It first found a compelling governmental interest in preventing drug trafficking and violent disorders. *Id.* at 701, 92 S.Ct. at 2666. The indictments thus far handed down as a result of the HAMC investigation implicate that interest. The Court also found that the reporters asserting the First Amendment privilege were likely to be able to "supply information to help the government determine whether illegal conduct had occurred and, if it had, whether there was sufficient evidence to return an indictment." *Id.* There is no doubt that, in this case, Barger can similarly provide information relevant to the subjects of the grand jury investigation.

As to the third factor, the need to avoid unduly broad investigatory methods, Barger notes that he answered a large majority of the questions posed to him, including questions concerning his personal violation of narcotics and other laws. He then argues that the interrogation about the membership, funding, and organizational structure of the HAMC improperly intruded into the zone of associational privacy and that such questions did not relate to his or others' criminal liability. The government responds that the FBI investigation has already revealed ongoing, organized criminal activity sufficient to constitute a criminal enterprise that may violate both RICO and the CCE statute.

We agree with the government. The questions that Barger refuses to answer are relevant to the enterprise elements of the RICO and CCE statutes and are part of a good-faith investigation that has already resulted in numerous indictments. This is not a case like *Ealy v. Littlejohn*, 569 F.2d 219 (5th Cir.1978), where the court found that the grand jury questions concerning the internal organization of an unpopular group were asked "on the pretext that ... members might have some information relevant to a crime." *Id.* at 229. Nor is it a case like *Bursey v. United States*, 466 F.2d 1059, 1087–88 (9th Cir.1972), where the grand jury questions concerned matters not relevant to the crimes being investigated, or were unnecessarily overbroad.

Finally, Barger has not made a showing of the particularized harm that is necessary to a successful claim of First Amendment privilege against having to testify in an otherwise constitutional inquiry. Earlier cases have stated that the party asserting a privilege in such circumstances must show a reasonable probability that compelled disclosure would subject an organization's members to threats, harassment, or reprisals from either government officials or private parties. *See Buckley v. Valeo*, 424 U.S. at 74, 96 S.Ct. at 661; *Local 1814, International Longshore-*

*men's Association v. Waterfront Commission,* 667 F.2d 267, 271–73 (2d Cir.1981). Here, Barger merely suggests the possibility of an escalation of wiretapping and government surveillance, without a showing that illegal surveillance has taken or will take place. Given the compelling governmental interest in the investigation of the HAMC, this potential increase in government surveillance in no way justifies shielding Barger from testifying.

The order of contempt is therefore affirmed.