In re Contempt Proceedings against
Zaven MELICKIAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 76–1811.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 8, 1976.

Decided Jan. 4, 1977.

James M. Martin, St. Louis, Mo., for appellant.

David M. Rosen, Asst. U. S. Atty., St. Louis, Mo., for appellee; Barry A. Short, U. S. Atty., St. Louis, Mo., on brief.

Before GIBSON, Chief Judge, and HEANEY and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

On August 18, 1976, Zaven Melickian appeared before a federal grand jury investigating possible violations of federal gambling laws and refused to answer the questions asked of him. Melickian was granted use immunity pursuant to 18 U.S.C. §§ 6002–6003 on September 15, 1976. After the immunity order was entered, Melickian returned to the grand jury room and again refused to answer any questions. The United States Attorney then filed motions to place Melickian in contempt under 28 U.S.C. § 1826 for refusing to testify. A hearing was set for September 17 for the filing of additional motions. Melickian subsequently filed a motion to suppress illegally obtained electronic surveillance evidence pursuant to 18 U.S.C. § 3504(a) and requested a hearing on his motion at which time the government would be required to produce the applications, affidavits, orders and recordings concerning the surveillance. The District Court denied Melickian's motion and reviewed the documents *in camera ex parte* without taking evidence or disclosing the documents requested. In an order issued on September 17, the District Court held that the *in camera ex parte* review was necessary to protect the secrecy of an ongoing grand jury investigation, that the order and affidavits were facially valid, and that a further evidentiary hearing on Melickian's motion to suppress was unnecessary. Melickian was found in contempt and confined on September 17.

An appeal from this order was filed and docketed with this Court on September 20, 1976. After Melickian's motion to grant bail was denied by the District Court, he made a similar motion with this Court. That motion was denied on September 22. When this Court was unable to hear Melickian's motion within thirty days from the filing of his notice of appeal as required by 28 U.S.C. § 1826(b), he was released on bail pending the filing of an opinion of this Court.

Three issues are presented for our consideration: (1) whether the fact that this appeal was not heard within thirty days from the date on which notice of appeal was filed deprives this Court of jurisdiction; (2) whether the trial court's decision to review Melickian's motion to suppress *in camera ex parte* was a proper exercise of its discretion; and (3) whether, on the basis of the orders and affidavits presented, the trial court's determination of probable cause to authorize the wiretap was proper. We will consider the issues in the order presented.

## I. *Is 28 U.S.C. § 1826(b) Jurisdictional?*

■ Section 1826 codifies the common law powers of the court to deal with recalcitrant witnesses in a trial or grand jury context. Subsection (a) empowers the court to hold in civil contempt any witness who refuses to testify without a showing of "just cause" for the refusal. Subsection (b) reads as follows:

No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

It seems clear that the provision directs the courts to deny bail whenever the grounds for appeal are frivolous, but the second sentence of the subsection directs that those appeals be disposed of within thirty days to minimize the confinement of a meritorious contemnor. The issue which we must resolve is whether the statute deprives us of jurisdiction if we fail to hear an appeal within thirty days.

Those Circuits interpreting and applying the thirty-day provision of § 1826(b) have reached widely disparate results. The

Second,[1] Third,[2] Sixth,[3] Ninth[4] and District of Columbia Circuits[5] have disposed of appeals under this provision within the thirty-day time period and thus have not had to deal authoritatively with the consequence of noncompliance. The Tenth Circuit has ruled that the thirty-day provision is mandatory, but failed to explain the reasons for its position.[6] It was unnecessary for the Court to discuss the effect of noncompliance since it decided the appeal within the statutory time limit. Both the First and the Fifth Circuits have considered appeals after the thirty-day period expired, but neither have given their reasons for doing so in any detail.[7] The Seventh and Ninth Circuits have followed the identical procedure used in this case.[8] The time for briefing and arguing the case was extended beyond the thirty-day period and the contemnor was released pending disposition of his appeal. In the only case before this Circuit, we accelerated the matter and rendered a decision within the thirty-day period.[9]

Two aspects of this evident conflict in authority should be noted. First, none of the courts holding the provision to be mandatory dismissed an appeal or refused to hear it because the thirty-day period had passed. None of them reached their decision in a situation where the effect of their holding would be to deny them jurisdiction. Each court heard the appeal within the thirty-day period. Second, none of the courts applying the provision discussed the issue in any detail. For these reasons, we believe a more detailed treatment of the issue is necessary.

One reason for the confusion over the provision's intended effect is the virtual absence of any instructive legislative history explaining the subsection's purpose. The few existing legislative references do suggest, however, that the provision was inserted in the senate bill in reaction to that bill's "no bail" provision.[10] The senate bill, as initially proposed in committee, denied bail to all contemnors during the pendency of their appeal. Many of the parties testifying before the Senate Subcommittee objected to the "no bail" provision.[11] The Justice Department, in a letter to the subcommittee, suggested that a sentence calling for the disposition of appeals in thirty days should be appended to the proposed § 1826(b). They argued that if all contemnors were denied bail, appeal of those contempt motions should be expedited to protect the meritorious contemnors from extended incarceration.[12]

The suggested provision was included in the bill considered by the House of Representatives. That bill did not deny bail abso-

1. *In Re Di Bella*, 499 F.2d 1175, 1176 (2nd Cir.), *cert. denied*, 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 306 (1974).

2. *In The Matter of Grumbles*, 453 F.2d 119, 121 n.7 (3rd Cir. 1971), *cert. denied*, 406 U.S. 932, 92 S.Ct. 1806, 32 L.Ed.2d 134 (1972).

3. *Matter of Andretta v. United States*, 530 F.2d 681, 682 (6th Cir. 1976).

4. *Charleston v. United States*, 444 F.2d 504, 506 (9th Cir. 1971), *cert. denied*, 404 U.S. 916, 92 S.Ct. 241, 30 L.Ed.2d 191 (1972).

5. *In Re Grand Jury Proceedings*, 160 U.S.App. D.C. 249, 491 F.2d 42, 43–44 (1974).

6. *Matter of Berry*, 521 F.2d 179, 181 (10th Cir.), *cert. denied*, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256, *rehearing denied*, 423 U.S. 1039, 96 S.Ct. 577, 46 L.Ed.2d 414 (1975).

7. *In Re Grand Jury Proceedings*, 532 F.2d 404, 406 n.3 (5th Cir. 1976); *United States v. Bever-ly*, 468 F.2d 732, 740–742 (5th Cir. 1972); *United States v. Doe*, 460 F.2d 328, 332 n.3 (1st Cir. 1972).

8. *In Re 1976 Grand Jury*, 534 F.2d 719, 730 n.11 (7th Cir. 1976); *Brown v. United States*, 465 F.2d 371, 372 (9th Cir. 1972).

9. *In Re Long Visitor*, 523 F.2d 443, 445 (8th Cir. 1975).

10. *Hearings on S. 30 Before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary*, 91st Cong., 1st Sess., at 15 (1969).

11. *Id.* at 217, 371, 463.

12. *Id.* at 371.

lutely like the senate version, but did set a standard for bail pending appeal that was considered by many[13] to be considerably more strict than the common-law standard which the courts had developed. Because the proposed bail standard was perceived to be so severe, those advocating the thirty-day provision before the House Committee still viewed it as a means of protecting the meritorious contemnor from extended incarceration. The Justice Department argued for the provision on the ground that the trial court would, in most cases, deny bail applications since the proposed bail standard permitted release only in extreme circumstances and since the standard required the trial court to determine, in effect, that its contempt order was erroneous.[14]

Although the arguments offered differed somewhat between the House and Senate Committees, there was general agreement that the provision would protect the meritorious appellant-contemnor from extended incarceration. However, no mention is made in the committee hearings of any intent to totally divest the court of jurisdiction if the thirty-day period passed without decision. The provision was intended to protect an interest of the meritorious contemnor, rather than bar consideration of contempt-related appeals.

This conclusion, based on our reading of the legislative materials, is supported by the fact that if § 1826(b) were read to be jurisdictional, it would defeat the coercive purposes which underlie the court's contempt authority. An appellate court's failure to act within the thirty-day period would deprive it and the District Court, which entered the contempt judgment, of jurisdiction in the matter.[15] In such event, the contempt order of the District Court would be vacated and the contemnor re-

leased from custody without receipt of the testimony which his incarceration was intended to furnish. We doubt Congress intended such an extreme result.

Moreover, giving the time limit jurisdictional effect may, in some circumstances, deny the parties enough time to properly brief and argue their positions and prevent the court from fully considering the issues involved. In fact, several of the courts that decided motions after the expiration of the thirty-day period indicated that they were doing so to assure full presentation of the party's arguments. Certainly, most appeals of this nature can be readily argued and decided within thirty days. But in those situations where a procedural delay occurs or an extension of time is necessary, a jurisdictional reading of subsection (b) would prevent the court from granting the necessary continuance.

■ None of the discussion above is intended to discount the importance of the contemnor's interest in swift consideration of his appeal. The statute calls for decision of a contemnor's appeal within thirty days and we intend to abide by that direction absent strong reasons for not doing so. We do feel, however, that when decision is impossible or unadvisable within the thirty-day period, the procedure followed by this Court which releases the contemnor pending disposition best reconciles the various interests bound up in the bail issue. The policy of the statute is upheld in that the contemnor is released until his appeal is decided. The court retains the necessary flexibility to assure a fair and complete consideration of the issues. Most importantly, the coercive pressure of the contempt order is not completely lost, even though the contemnor is released pending disposition, because the threat and the actu-

---

**13.** *Hearings on S. 30 Before Subcomm. No. 5 of the House Comm. on the Judiciary,* 91st Cong., 2nd Sess., at 307, 398, 494–495 (1970).

**14.** *Id.* at 163.

**15.** The only other possible result would be that the District Court would retain its jurisdiction

in the matter even though ours was lost. In this situation, the contemnor would be penalized for the court's inadvertence by losing his right to appeal while being forced to remain in jail.

ality of re-incarceration still loom on the horizon.

## II. The Adequacy of the Court's In Camera Ex Parte Review of Melickian's Motion to Suppress.

Melickian argues that the District Court erred in not permitting him to inspect the applications and affidavits in support of the government's wiretap and is not holding an evidentiary hearing on the matter. He maintains that these errors of the District Court provided "just cause" under 28 U.S.C. § 1826(a) for his refusal to testify. The government claims that an *in camera ex parte* hearing was necessary because the documents contained information which, if revealed to the persons under surveillance, would undermine an ongoing investigation. The issue presented, therefore, is whether the District Court abused its discretion by reviewing Melickian's motion in this manner.

Several Circuits have considered this issue.[16] Most have followed the decision of the Second Circuit in *In Re Persico*, 491 F.2d 1156 (1974), which held that a grand jury witness protected by use immunity is not entitled to litigate the legality of court-ordered surveillance in a civil contempt proceeding. The contemnor's statutory right to know whether questions asked of him were derived from illegal surveillance was adequately protected, in the court's view, by its *in camera* inspection of the application and supporting affidavits. *Id.* at 1162. More importantly, the Court felt a review *in camera ex parte* was necessary to avoid protracted interruption of the grand jury proceedings. *Id.* at 1160–1161.

The First Circuit in *In Re Lochiatto*, 497 F.2d 803 (1st Cir. 1974), reached a somewhat different result. It recognized three separate interests involved in the balancing process: the need to avoid unduly impeding grand jury proceedings, the concern for protecting sensitive material contained in the applications and affidavits from disclosure; and the right of appellant to assert the defenses established by Congress. *Id.* at 807. The Court held that the type of hearing granted depends on whether or not the government objects to disclosure on secrecy grounds. If the government does not object, the appellant may review the materials and argue the issue in a limited hearing. *Id.* at 808. If the government objects, the District Court must review the documents *in camera ex parte* to determine whether the secret information can be deleted and access to the excerpted material granted. *Id.* at 808. If so much of the material is sensitive that selected deletion is impossible, the court must review the applications and warrants *in camera* to determine their constitutional and statutory validity. *Id.* No hearing is required.

█ In our view, the procedure followed in *Lochiatto* most effectively reconciles the interests of the contemnor in a limited hearing and the interests of the government in facilitating grand jury proceedings and in maintaining secrecy when necessary. We adopt the approach taken in *Lochiatto* with the following refinement. While it is the obligation of the District Court to determine whether delay or secrecy is a factor, it cannot make that determination based on the conclusory allegations of government's counsel. A minimal showing must be made before contemnor's right to inspect and argue can be denied.

█ In summary, then, we uphold the actions of the District Court in light of the fact that it substantially followed the procedure we have outlined. It held an *in camera ex parte* hearing to verify the government's allegation that the wiretap

---

**16.** *In Re Gordon*, 534 F.2d 197 (9th Cir. 1976); *In Re Millow*, 529 F.2d 770 (2nd Cir. 1976); *In Re Grand Jury Proceedings*, 522 F.2d 196 (5th Cir. 1975), *cert. denied sub nom., Worozbyt v. United States*, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761, 44 U.S.L.W. 3564 (1976); *United States v. Grusse*, 515 F.2d 157 (2nd Cir. 1975); *Droback v. United States*, 509 F.2d 625 (9th Cir. 1974), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 450 (1975); *In Re Lochiatto*, 497 F.2d 803 (1st Cir. 1974); *In Re Persico*, 491 F.2d 1156 (2nd Cir.), *cert. denied*, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158, *rehearing denied*, 419 U.S. 1060, 95 S.Ct. 645, 42 L.Ed.2d 657 (1974).

application and affidavits involved sensitive materials. An additional showing by the government was unnecessary as the documents revealed on their face that disclosure would threaten the status of crucial informants and the effectiveness of an ongoing investigation. For these reasons, the court's denial of Melickian's motion for disclosure and for an evidentiary hearing was not an abuse of its discretion.

III. *The Adequacy of the Trial Court's Probable Cause Determination.*

As explained in *Alderman v. United States*, 394 U.S. 165, 175, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the general rule under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.*, is that eavesdropping and wiretapping are permitted only upon a showing of probable cause. We have reviewed the applications and affidavits submitted by agents of the FBI and the Department of Justice, and have examined the order issued by the District Court. There is ample evidence to support the court's probable cause determination.

For the reasons expressed in this opinion, we affirm the decision of the District Court.