763 F.2d 321
 In re GRAND JURY PROCEEDINGS:
Robin Jack SAMUELSON, Witness Before the Grand Jury, Appellant.
In re GRAND JURY PROCEEDINGS:
Jay Kenton SAMUELSON, Witness Before the Grand Jury, Appellant.
 Nos. 84-2604, 84-2629.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 16, 1985.
Decided May 28, 1985.
 
 Frank L. Racek and Jonathan R. Fay, Fargo, N.D., for appellant.
 Norman G. Anderson, Fargo, N.D., for appellee.
 Before HEANEY, McMILLIAN and JOHN R. GIBSON, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 In 1984, Jay and Robin Samuelson were imprisoned for civil contempt when they refused, after being ordered by the district court, to answer questions put to them by a federal grand jury investigating drug transactions. As the Samuelsons had already been prosecuted and found guilty in federal court for their participation in the transactions, the government argued they could not claim the fifth amendment privilege against self-incrimination, as they sought to do. The Samuelsons, however, argue that the privilege was applicable, since the questions dealt with matters for which they could still be prosecuted in state court. We reverse the judgment of the district court.
 
 
 2
 In 1981, Jay and Robin Samuelson were convicted of various federal crimes relating to drug transactions. In 1983, Jay Samuelson was brought before a federal grand jury in Fargo, North Dakota, which was interested in whom Samuelson's drug suppliers had been. When the grand jury asked him if he knew certain individuals, Samuelson refused to answer on the basis that to do so would violate his constitutional rights. He persisted in his refusal after being ordered to answer by the district court and, as a result, was found to be in contempt of court and imprisoned. A panel of this court upheld the sentence of civil contempt, which was not applicable to the time he was serving for his prior convictions. In re Grand Jury Subpoena, 739 F.2d 1354 (8th Cir.1984).
 
 
 3
 In 1984, both Jay and Robin Samuelson were brought before another grand jury and asked about the drug transactions connected with their convictions.[1] Each refused to answer. The government again asked the district court to order the Samuelsons to answer. In applying for the order, the government stated that to answer would not incriminate the Samuelsons, since the federal statute of limitations had expired. Further, the government stated that since the questions related to Count 54 of the original indictment,[2] and since Jay was convicted on Count 54 and the government had dismissed Count 54 in its plea bargain with Robin, neither Samuelson was now in jeopardy of prosecution. The government conceded neither Jay nor Robin had been granted immunity before being brought before the grand jury.[3]
 
 
 4
 The district court ordered each to answer the questions posed and, upon their refusal when brought before the grand jury a second time, imposed sentences of imprisonment for contempt. The Samuelsons appealed the sentences to this court. Since we found it inadvisible to render a decision within thirty days of the appeals, as required by 28 U.S.C. Sec. 1826(b) (1982), we ordered the Samuelsons released from the custody of the United States Marshal to the custody of the Attorney General of the United States pending our decision in this case. See Melickian v. United States, 547 F.2d 416 (8th Cir.), cert. denied, 430 U.S. 986 (1977).
 
 
 5
 In their appearances before the grand jury, the Samuelsons refused to answer on the basis of the fifth amendment privilege against self-incrimination. They argue now that the privilege was rightfully invoked and that the judgment and commitment of the district court should be reversed. The government argues, however, that the privilege should not apply to the Samuelsons, since it may be invoked only to protect from further criminal prosecution, and since here there was no jeopardy of further federal prosecution. The Samuelsons reply that while Count 54 of the federal indictment addressed drug transactions in North Dakota, the questions ostensibly stemming out of the count asked of them before the grand jury involved South Dakota transactions and that they still might be prosecuted in that state. The government responds that since "the State of South Dakota has yet to make the slightest inquiry concerning the event," "the possibility of prosecution by the State of South Dakota in this case is so remote, speculative and fanciful as to be nearly non-existent." Thus, the government essentially argues that the possibility of prosecution of the Samuelsons by South Dakota should not be taken seriously:
 
 
 6
 The mere possibility of South Dakota beginning an investigation of the drug transactions * * * with a view toward prosecuting either Samuelson is simply too remote to deserve serious consideration. While interest might have been piqued at some earlier moment in a state like South Dakota where the tentacles of the Samuelson amphetamine dealing network extended, none has developed. A reasonable time, for example, might have been during the period immediately after the trial and convictions in 1981. Common sense dictates that a state prosecution at this late date is like a wisp of wood smoke dissipating in a high wind.
 
 
 7
 The fifth amendment provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege, which is to be accorded a liberal construction, Spevack v. Klein, 385 U.S. 511, 516, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967), "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory * * * [and] protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." Kastigar v. United States, 406 U.S. 441, 444-45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). Specifically, the privilege protects grand jury witnesses from being forced to give testimony which may later be used to convict them in criminal proceedings, Lefkowitz v. Cunningham, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977), and protects "a federal witness against incrimination under state as well as federal law." Murphy v. Waterfront Commission, 378 U.S. 52, 78, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964).
 
 
 8
 The privilege, however, "protects against real dangers, not remote and speculative possibilities." Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). Thus, "when a witness can demonstrate a fear of prosecution, which is more than fanciful or merely speculative, he has a claim of privilege that meets constitutional muster." In re Corrugated Container Antitrust Litigation, 662 F.2d 875, 883 (D.C.Cir.1981) (quoting In re Folding Carton Antitrust Litigation, 609 F.2d 867, 871 (7th Cir.1979) ). The specific question we are faced with, therefore, is whether the Samuelsons' risk of prosecution in South Dakota is so unlikely as to be imaginary, fanciful, a trifling hazard, remote or speculative, or is something more than the limited possibility that underlies the various descriptors.
 
 
 9
 Here, we believe the Samuelsons' risk is great enough that the privilege was properly invoked. Even though there is no present indication that any South Dakota prosecutor is investigating the Samuelsons' drug transactions, this alone is no guarantee that a criminal action against them will never be started there. See In re Corrugated Container Antitrust Litigation, 662 F.2d at 885. In this case the possibility of prosecution alone removes the risk of such from the realm of the imaginary and speculative. See In re Master Key Litigation, 507 F.2d 292, 293 (9th Cir.1974) (privilege does not depend upon likelihood but upon possibility of prosecution), cited in Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1087 (5th Cir.1979). As the Seventh Circuit has stated, the privilege should not depend upon "a judge's prediction of the likelihood of prosecution." In re Folding Carton Antitrust Litigation, 609 F.2d at 871. Rather, "[t]o the extent that an assessment of the probability of prosecution is significant in the trial court's evaluation of an asserted privilege, it is more properly accomplished through examination of the more traditional tests, viz, statute of limitations, immunity, double jeopardy." Id. at 872.
 
 
 10
 In affirming Jay Samuelson's earlier sentence for civil contempt, we observed that "[t]he petitioner fears that his testimony may subject him to future state and federal criminal prosecutions." 739 F.2d at 1360. While at that time we found "the petitioner's fears * * * [were] speculative," id., the questions put to the Samuelsons by the second grand jury made those fears considerably more realistic. In Jay Samuelson's first appeal, we also observed that "as the government concedes in its brief, if the grand jury questions go beyond the events which surrounded the crimes for which the petitioner has already been convicted, the petitioner will have the right to assert his privilege against self-incrimination." Id. As the grand jury questions now have entered this realm, the Samuelsons' right to invoke the privilege must be preserved.[4]
 
 
 11
 The government also argues that, given the strictures of Fed.R.Crim.P. 6(e),[5] it is "virtually certain" that South Dakota would not learn of the information the grand jury sought from the Samuelsons, since it could not be disclosed, absent a court order. However, as the Supreme Court noted in Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), a case where a civil litigant sought to obtain transcripts of federal criminal grand jury proceedings, a court that decides whether such information should be released "necessarily is infused with substantial discretion," id. at 223, 99 S.Ct. at 1675, given its need to balance the traditional secrecy of the grand jury against a showing that "the material * * * is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that * * * [the] request is structured to cover only material so needed." Id. at 222, 99 S.Ct. at 1674 (footnote omitted). Given such necessary discretion, we believe that the prophylaxis arising from Rule 6(e) is simply too uncertain to render the fifth amendment privilege unavailable to the Samuelsons.
 
 
 12
 We reverse the judgment of the district court. The Samuelsons are to remain in the custody of the Attorney General of the United States. The time served for the civil commitments here appealed is to be credited against their sentences for their prior convictions.
 
 
 
 [1]
 Specifically, Jay Samuelson was asked:
 
 
 [1]
 Did you call Joe Schmalz on or about November 12, 1979?
 
 
 [2]
 Did you send Robin Samuelson to Sioux Falls, South Dakota, on or about November 12, 1979?
 
 
 [3]
 Did you ever see 750,000 dosage units of dl amphetamine sulfate on or about November 12, 1979?
 
 
 [4]
 Who set up the transaction concerning the 750,000 dosage units of dl amphetamine sulfate?
 
 
 [5]
 Who were the 750,000 dosage units of dl amphetamine sulfate obtained from?
 Similarly, Robin Samuelson was asked:
 
 
 [1]
 With regard to Count 54 of the Indictment, who did you see when you were in Sioux Falls, South Dakota, on or about November 12, 1979?
 
 
 [2]
 With regard to Count 54 of the Indictment, did you see 750,000 dosage units of dl amphetamine sulfate on or about November 12, 1979?
 
 
 [3]
 Did you meet with Joe Schmaltz in Sioux Falls, South Dakota, on or about November 12, 1979?
 
 
 [4]
 Did Joe Schmaltz give you approximately $8,000.00 on or about November 12, 1979?
 
 
 [5]
 Did you transport Joe Schmaltz on or about November 12, 1979, from Sioux Falls, South Dakota, to Fargo, North Dakota?
 
 
 [2]
 The count charged:
 That on or about the 12th day of November, 1979, in the Southeastern Division, District of North Dakota, JAY KENTON SAMUELSON, ROBIN JACK SAMUELSON, JAMES SAMUELSON and JAMES RAYMOND MINIACI knowingly and intentionally did unlawfully distribute approximately 750,000 tablets of dl amphetamine sulfate, a Schedule II controlled substance.
 (In violation of Title 21 U.S.C., Section 841(a)(1) and Title 18 U.S.C., Section 2.)
 
 
 [3]
 In the hearing before the district court, the government stated its reasons for not granting immunity:
 I think basically, your Honor, we felt that it was covered, the fact that they have already been tried and convicted. And that plus the fact that the statute of limitations, we felt that this immunity was just, you know, another exercise or another paper to file or time expired between our request to the Department of Justice and back again. We felt that the need was not there, that the immunity is granted where a particular need is necessary. And in these particular cases it did not call for it.
 Of course, had immunity been granted by the federal government, the Samuelsons would have been protected from the use of their grand jury testimony in a state prosecution and could not have successfully asserted a fifth amendment privilege against self-incrimination. See Murphy v. Waterfront Commission, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964).
 
 
 [4]
 We recognize a certain tension exists between our position here and the holding of In re Baird, 668 F.2d 432 (8th Cir.), cert. denied, 456 U.S. 982, 102 S.Ct. 2255, 72 L.Ed.2d 860 (1982), where a higher standard was required to show a real and substantial fear of foreign prosecution. We believe, however, that Baird and the cases we cited there have limited applicability to the case before us since they deal with the possibility of prosecution in a foreign country and not merely in a state court
 
 
 [5]
 Rule 6(e)(3)(C)(i) provides: "Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made * * * when so directed by a court preliminarily to or in connection with a judicial proceeding."