## In re SEALED CASE.

### No. 86–5161.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 15, 1986.

Decided July 8, 1986.

As Amended July 8, 1986.

Thomas D. Yannucci, Washington, D.C., for appellant.

Saul M. Pilchen, Asst. U.S. Atty., a member of the Bar of the District of Columbia Court of Appeals, pro hac vice by special leave of Court, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and John E. Stevens, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before SCALIA, STARR and BUCKLEY, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

This is an expedited appeal from a judgment of civil contempt in a grand jury proceeding. In an earlier order and memorandum opinion, filed May 16, 1986, we affirmed the District Court's judgment finding appellant in contempt for refusing,

after a grant of immunity, to answer questions propounded to him in the grand jury proceeding. We expressly reserved, however, the question whether appellant should receive credit on his sentence on an unrelated criminal conviction for time spent in custody pursuant to the contempt order beyond the statutorily prescribed period of thirty days for deciding appeals in such cases. 28 U.S.C. § 1826(b) (1982). Following the court's order directing further submissions on this question, the parties filed supplemental briefs addressing solely this issue. This opinion is likewise directed solely to the question of crediting.

Our role in resolving the issue before us is not to apply our own notions of equity in this particular case, but rather to determine whether Congress intended to create the remedy that appellant now seeks. *See, e.g., Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). As in all matters of divining Congress' intent, the language of the statute provides the critical reference point for our analysis. *Id.*

Subsection (a) of 28 U.S.C. § 1826 sets forth the conditions under which recalcitrant witnesses may be held in confinement until they are willing to obey an order requiring testimony or other information in a pending judicial or grant jury proceeding. The next subsection, 1826(b), provides as follows:

> No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay.

> Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

■ By the plain terms of this provision, Congress intended that appeals from judgments of civil contempt imposed upon recalcitrant witnesses be decided within thirty days. But the statute is silent as to remedies for contemnors in the event an appeal is not resolved within the requisite period.[1] Congress knows full well how to craft a remedy for violation of a statutory time limit on judicial proceedings. For example, an entire provision of the Speedy Trial Act is devoted to detailing sanctions for violation of criminal trial time limits. 18 U.S.C. § 3162 (1982); *see also id.* at 3164(c) (1982). Under established canons of statutory construction, the fact that Congress enacted no analogous provisions in the statute at issue here is a powerful indication that Congress did not intend to provide a remedy for violation of the thirty-day rule. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 21, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979); *cf. Northwest Airlines,* 451 U.S. at 91 & n. 24, 101 S.Ct. at 1580 & n. 24.

Moreover, Congress has expressly provided a remedy for the benefit of contemnors, "the class for whose *especial* benefit" the thirty-day rule was arguably enacted. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) (emphasis in original) (citation omitted). The liberal standard for granting bail ensures that no contemnor will languish in custody pending appeal except one who cannot show that the appeal is not frivolous or taken for delay.[2] In light of this express statutory remedy designed to protect con-

---

1. Of course, a contemnor is not without any remedy; mandamus may be sought requiring the appellate court to decide the appeal in timely fashion. *See Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (writ of mandamus traditionally used to compel an inferior court " 'to exercise its authority when it is its duty to do so.' ") (quoting *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967)).

2. While the procedure is obviously atypical, we can see no reason why a contemnor, such as appellant, who is serving time for an unrelated criminal conviction may not seek bail (i.e., release from confinement for the civil contempt) under 28 U.S.C. § 1826(b), so he could thereby resume serving his criminal sentence.

temnors, we find it "highly improbable that 'Congress absentmindedly forgot to mention'" another remedy for contemnors awaiting disposition of their appeal. *Transamerica*, 444 U.S. at 20, 100 S.Ct. at 247 (citation omitted).

Although mindful of the vagaries of employing legislative history as a mechanism for discerning the intent of the entire enacting body, we are nonetheless obliged to examine the genesis and development of this statutory provision for whatever light that inherently elusive process might shed. *See, e.g., Guardians Association v. Civil Service Commission*, 463 U.S. 582, 609, 103 S.Ct. 3221, 3236, 77 L.Ed.2d 866 (1983) (Powell, J., concurring in judgment); *Cannon v. University of Chicago*, 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979). Our resort to legislative history, however, only confirms our view that the express statutory remedy of bail is adequate to serve the legislative purpose undergirding section 1826(b). *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536, 541, 104 S.Ct. 831, 839, 841, 78 L.Ed.2d 645 (1984).

The original section of the Senate Bill that ultimately was enacted as 28 U.S.C. § 1826 denied bail to all contemnors during the pendency of their appeals. This regime prompted misgivings in the legislative process as to the fate of worthy contemnors languishing in the wake of an erroneous judgment of contempt. "In order to take into account the exceptional case where substantial grounds for appeal may exist," the Justice Department advanced the suggestion that a thirty-day limit on appellate consideration be added to the provision that denied bail in all cases. *Hearings Before the Subcomm. on Criminal Laws and Procedure of the Senate Comm. on the Judiciary on S. 30, et al.*, 91st Cong., 1st Sess. at 371 (1969). The upshot was that the Senate voted to retain a stringent restriction on bail (i.e., bail was to be granted

only when the contemnor established a "substantial possibility of reversal"), but at the same time embraced the thirty-day time constraint on appellate adjudication as suggested by the Justice Department. Under this modified approach, the thirty-day rule was understood as a means to mitigate "the fact that bail will usually be denied by the trial court." *Hearings Before Subcomm. No. 5 of the House Comm. on the Judiciary on S. 30, et al.*, 91st Cong., 2d Sess. at 163 (1970).

As events unfolded, however, the House declined to accept the Senate's strict standard with respect to granting bail. Rather, the House adopted a much more generous standard under which bail is granted to a contemnor unless the appeal is either "frivolous or taken for delay." The House version ultimately prevailed in conference and was enacted into law.

In our view, this history suggests that Congress would not have wanted the thirty-day time limit to operate as a cap on time that may be served by a contemnor, no matter how frivolous his appeal. As we have just seen, the thirty-day rule was apparently intended to protect contemnors with substantial grounds for appeal. Interpreting the thirty-day limit to contain the remedy appellant seeks would benefit only contemnors who do not qualify for bail, that is those who fail to demonstrate that their appeal is not frivolous or taken for delay.

 We are aware that some courts have concluded that when an appeal is not resolved within the thirty-day period, a contemnor whose request for bail was properly denied under the frivolous-appeal standard should nonetheless be released pending disposition of the appeal. *See, e.g., Melickian v. United States*, 547 F.2d 416 (8th Cir.), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1684, 52 L.Ed.2d 381 (1977).[3] We also

---

3. Some courts have stated or assumed that courts are deprived of jurisdiction once the thirty-day limit expires. *See, e.g., In re Berry*, 521 F.2d 179, 181 (10th Cir.) (*per curiam*), *cert. denied*, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975). With all respect, we find no merit in this approach. Neither the language nor the legislative history of the statute dictates such a result. *See In re Grand Jury Proceedings*, 776 F.2d 1099, 1102 (2d Cir.1985); *Melickian*, 547

agree with appellant's argument that these cases cannot properly be distinguished on the ground that they involved civil contemnors who, unlike appellant, were not already incarcerated by virtue of a prior criminal conviction. *See In re Baird,* 668 F.2d 432, 433 n. 1 (8th Cir.), *cert. denied,* 456 U.S. 982, 102 S.Ct. 2255, 72 L.Ed.2d 860 (1982). The fact that a recalcitrant witness was already incarcerated when held in civil contempt provides no basis for treating that witness differently for purposes of the contempt action.

We decline, rather, to follow the *Melickian* line of authority for a more fundamental reason. In *Melickian,* the court justified its automatic-release rule on the ground that it "best reconciles the various interests bound up in the bail issue" and upholds "the policy of the statute." 547 F.2d at 419. But this approach, with all respect, misconceives the appropriate judicial mission. In our view, judicial creation of a statutory remedy based on such a policy analysis is foreclosed where, as here, the language, structure and legislative history of the statute provide no support for the proposition that Congress intended to create the remedy. *See, e.g., Northwest Airlines,* 451 U.S. at 94–95, 101 S.Ct. at 1582, *Redington,* 442 U.S. at 575–76, 99 S.Ct. at 2488–89. Our job is to interpret the statute that Congress has set before us, not to attempt to improve upon what Congress has done. *Redington,* 442 U.S. at 578, 99 S.Ct. at 2490.

The request for crediting is therefore denied.

*So ordered.*

---

F.2d at 419. Moreover, the availability of mandamus, *see supra* note 1, a less drastic remedy for noncompliance with the statutory deadline, and the weighty public interest in the orderly functioning of grand juries and the judicial process dissuades us from imputing to Congress a desire to render appellate courts powerless to enforce civil contempt orders after thirty days have elapsed. *Cf. Brock v. Pierce County,* — U.S. —, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986).