**Allen HERSCHAFT, Plaintiff,**

v.

**THE NEW YORK CITY CAMPAIGN FINANCE BOARD, Defendant.**

**No. 00 CV 3754 CBA.**

United States District Court, E.D. New York.

Dec. 8, 2000.

Allen S. Herschaft, New York City, Pro se.

Sue Ellen Dodell, Gen. Counsel, Amy M. Loprest, Deputy Gen. counsel., Jonathan Wayne, Assoc. Counsel, New York City, for defendant.

## MEMORANDUM AND ORDER

AMON, District Judge.

Plaintiff challenges the constitutionality of Section 3–03(c)(4)(i) of Title 52 of the Rules of the City of New York and Section 3–703(6) of New York City's Administrative Code and Charter, and requests a preliminary injunction barring the defendant New York City Campaign Finance Board (the "Campaign Finance Board") from enforcing the two provisions against him. The defendant cross-moves to dismiss plaintiff's Amended Complaint[1] pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated herein, plaintiff's motion for a preliminary injunction is denied and defendant's motion to dismiss is granted.

### Background

· Plaintiff is seeking to run as an independent candidate for the New York City Council ("City Council") from the 48th District in Brooklyn in the 2001 election. He intends to collect campaign contributions in small amounts, typically less than $10, from worshippers in various synagogues within his district and would like to receive public matching funds from defendant Campaign Finance Board.

The Campaign Finance Board is a five-member body consisting of two individuals from different political parties appointed by the Mayor, two individuals from different political parties appointed by the Speaker of the City Council, and a chairman appointed by the Mayor in consultation with the Speaker. The Board is responsible for administering the New York City Campaign Finance Program, which was established in 1988 by the New York City Campaign Finance Act, N.Y.C. Admin. Code §§ 3–701, *et seq.*

Under the City's campaign finance program, candidates for Mayor, Public Advocate, Comptroller, Borough President, or City Council who meet certain requirements are eligible to receive public funding for their campaigns. In the 2001 election, eligible candidates can receive in public funds four times the amount they raise on their own from each contributor, up to a maximum of $1,000 in public funds per contributor. For example, if a candidate were to raise $100 from a single contributor, the City would give the candidate an additional $400.

To be eligible for these public matching funds, a candidate for City Council must, among other things, meet a threshold of at least $5,000 in contributions from New York City residents, including at least 50 contributions of $10 or more from residents of the candidate's district. N.Y.C. Admin. Code § 3–703(2)(iv). Candidates desiring public funding are also subject to strict contribution and expenditure limitations,[2] and extensive record-keeping and disclosure requirements. It is these record-keeping and disclosure requirements that are at issue in this case.

Specifically, candidates must report in periodic disclosure statements to the Campaign Finance Board "the full name, residential address, occupation, employer, and business address" of each contributor, and the amount of each contribution and the date it was received. N.Y.C. Admin. Code § 3–703(6); N.Y.C. Rules, Tit. 52, § 3–03(3)(c)(1): A contributor's occupation, employer, and business address, however, need not be disclosed for any contributor whose aggregate contributions are $99 or less. N.Y.C. Admin. Code § 3–703(6); N.Y.C. Rules § 3–03(6). Candidates are also required to maintain records of all of their contributions, including photocopies of checks or other monetary instruments and, for cash contributions, a written log containing, for each contribution, the contributor's name, residential

---

**1.** Plaintiff filed his Complaint on June 26, 2000 and his Amended Complaint on September 20, 2000.

**2.** In the 2001 election, candidates for City Council may only receive a maximum of $2,500 from each contributor and may only spend $137,000 overall in the general election.

address, contribution amount, date, and signature. N.Y.C. Rules, Tit. 52, § 4–01(a)–(b). A candidate need not separately itemize individual contributions from a single donor in his disclosure statements if those contributions total less than $99, but such un-itemized contributions are not eligible for public matching funds. N.Y.C. Rules, Tit. 52, § 3–03(c)(4)(i).

On May 9, 2000, plaintiff petitioned the Campaign Finance Board pursuant to Section 8–01 of Title 52 of the Rules, asking that it amend Section 3–03(c)(4)(i) to permit relaxed reporting rules for campaign contributions of less than $10. (Am. Comp. ¶ 3; Gordon Aff. Ex. C.) In particular, plaintiff suggested that the Campaign Finance Board match with public funds contributions of less than $10 "provided that the contributor provides his full name and signature in an affirmation that he is a resident of the City on N.Y. (one of the 5 boroughs)." (Gordon Aff. Ex. C.) On June 21, 2000, the Campaign Finance Board declined to adopt plaintiff's proposed amendment. (Am. Compl. ¶ 4; Gordon Aff. Ex. D.)

## Discussion

### I. Defendant's Motion to Dismiss

Defendant moves to dismiss the Amended Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). A district court should only grant a motion to dismiss if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000). The Court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to plaintiff. *Tarshis*, 211 F.3d at 35.

In this case, the alleged constitutional violations in the Amended Complaint, whether grounded in the First or Fourth Amendments fail as a matter of law.

### A. First Amendment Challenge

#### 1. Freedom of Association

■ Plaintiff's strongest challenge to Section 3–03(c)(4)(i) of Title 52 of the Rules of the City of New York and Section 3–703(6) of New York City's Administrative Code and Charter, based on the First Amendment privilege of association, is unavailing. Even accepting all of plaintiff's allegations as true and drawing all inferences from those allegations in plaintiff's favor, the instant campaign finance provisions survive the exacting scrutiny standard established by the Supreme Court in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam), for the consideration of campaign disclosure rules.

In *Buckley*, the Supreme Court noted that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment" and held that disclosure provisions must be reviewed with "exacting scrutiny." *Buckley*, 424 U.S. at 64, 96 S.Ct. 612. Thus, the government's interests must be "sufficiently important to outweigh the possibility of infringement" and there must be a "relevant correlation" or "substantial relation" between the governmental interests and the information required to be disclosed. *Id.* at 64, 66, 96 S.Ct. 612; *see also In re Grand Jury Proceedings*, 776 F.2d 1099, 1102–03 (2d Cir.1985); *Local 1814, Int'l Longshoremen's Assoc., AFL–CIO, v. Waterfront Comm'n of New York Harbor*, 667 F.2d 267, 271 (2d Cir.1981).

The Court in *Buckley* considered the similar record-keeping and disclosure provisions of the Federal Election Campaign Act of 1971 ("FECA"), which at the time required campaign committees to keep records including the name and address of every individual making a contribution in excess of $10, along with the date and the amount of the contribution, and additionally to keep records of the donor's occupation and principal place of business if the

donor's contributions in aggregate totaled more than $100. *Buckley*, 424 U.S. at 63, 96 S.Ct. 612. The FECA also required campaigns to submit reports containing the full name, mailing address, occupation, and principal place of business of each person who had contributed more than $100 in a calendar year, as well as the amount and date of the contributions. *Id.*

In upholding these provisions, the Court found that the disclosure requirements served, in the least restrictive way, the substantial governmental interests in: (1) providing the electorate with campaign finance information, (2) deterring actual corruption and avoiding the appearance of corruption, and (3) gathering data to detect violations of contribution limitations. *Buckley*, 424 U.S. at 66–68, 96 S.Ct. 612. Although the Court left the door open to specific challenges by parties and candidates who could show "that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisal from either Government officials or private parties," it declined to exempt minor parties and independent candidates as a whole from FECA's requirements. *Id.* at 74, 96 S.Ct. 612.

Applying *Buckley* to the instant case, New York City's campaign finance disclosure requirements pass constitutional muster. The instant provisions are substantially related to significant governmental interests. Most importantly, the challenged disclosure provisions are necessary to ensure compliance with the City's campaign finance laws, in particular its rules regarding public funding, and allow the Campaign Finance Board to determine whether a candidate is eligible for matching funds and in precisely what amount.

Under the City's public financing program, eligible candidates in the 2001 City Council election will be able to receive for each contribution made to them by a New York City resident, regardless of the amount, four times that amount in public matching funds up to a maximum of $1,000 per contributor. The City plainly has a substantial interest in ensuring that public money, which is distributed in a four-to-one ratio, is given only to those candidates that have the requisite support within their district and that have received legitimate matchable contributions from New York City residents. The requirement of recording and disclosing a contributor's address is central to the City's determination of whether the contribution is one deserving of matching funds. A simple affirmation of the contributor would not lend itself to any readily available means of confirmation. This interest in ascertaining the propriety of giving public funds to a candidate is not lessened when the candidate accepts small contributions. Under the current system, the City matches contributions of any amount.

In addition, the City's disclosure provisions also serve the interest recognized in *Buckley* of providing the electorate with information about the candidates for public office and their constituencies, in particular "where political campaign money comes from and how it is spent by the candidate." 424 U.S. at 66–67, 96 S.Ct. 612 (citing H.R.Rep. No. 92–564, at 4 (1971)); *see also Vote Choice, Inc. v. Di Stefano*, 4 F.3d 26, 32 (1st Cir.1993) (considering a similar so-called "first dollar" disclosure provision and concluding that "there is a substantial link between data revealed by first dollar disclosure and the state's compelling interest in keeping the electorate informed about which constituencies may command a candidate's loyalty").[3]

---

**3.** The other government interests present in *Buckley* do not seem pertinent here. In *Vote Choice,* the First Circuit noted that "[c]ommon sense suggests that information about the source of a $1 contribution does not advance the state's interest in deterring actual or apparent corruption because such a dona-

tion has a limited (perhaps nonexistent) potential to exact an illegal or unethical quid pro quo." 4 F.3d at 32. Likewise, that court ruled that information about small contributions also "bears little discernable relation to the state's interest in enforcing contribution limits that dip no lower than $1,000: few

The challenged first dollar disclosure provisions here are therefore also not impermissibly overbroad. In *Buckley*, the Supreme Court upheld the FECA's $100 threshold for reportable contributions, stating that "[t]he line is necessarily a judgment decision, best left in the context of this complex legislation to congressional discretion." 424 U.S. at 83, 96 S.Ct. 612. Although the Court declined to address explicitly whether a $10 reporting threshold would be constitutional,[4] the *Buckley* decision implied that legislatures have considerable discretion in determining what limitations are within the bounds of "rationality." *Id.*

In this case, given the important government interests in ensuring that public money is properly distributed to candidates for office and in providing information to the electorate about the candidates, and since the size of the contribution does not attenuate those interests, the provisions at issue here are not unconstitutional. As the First Circuit stated in *Vote Choice, Inc. v. Di Stefano*, since the government has enunciated legitimate governmental interests and "[b]ecause the notion of first dollar disclosure is not entirely bereft of rationality ... any general embargo against first dollar disclosure statutes would be inconsistent with the *Buckley* court's insistence upon judicial deference to plausible legislative judgments." 4 F.3d at 33.[5]

Finally, plaintiff cannot establish that he deserves to be exempted from the application of the disclosure law because "the compelled disclosure of [his] contributors' names will subject them to threats, harassment, or reprisal from either Government officials or private parties." *Buckley*, 424 U.S. at 74, 96 S.Ct. 612. Plaintiff did not contend in his papers that harassment of his contributors was a concern in soliciting their addresses. At oral argument, he opined that this concern was implicated by the common knowledge that there is a current conflict in the Middle East between Palestinians and Jews, and the fact that Orthodox Jewish residents of New York City have been attacked. These generalized assertions fall woefully short of demonstrating that in an election for the New York City Council in which plaintiff's opponent is also Jewish, plaintiff's supporters face harassment if their addresses are revealed.

### 2. *Freedom of Speech*

Plaintiff's freedom of speech challenge to the City's campaign disclosure requirements also has no merit. In *Buckley*, the Supreme Court stated that "[u]nlike [FECA's] overall limitations on contributions and expenditures," which the Court found to impermissibly burden a candidate's freedom of political expression under the First Amendment,[6] its "disclo-

---

persons will donate $1 to a [Political Action Committee] on more than 1,000 separate occasions-and those that try will likely grow arm-weary in the process." *Id.*

4. The Court declined to reach the issue because the FECA required only that candidates maintain records of donations greater than $10 and did not provide for the public disclosure of contributions between $10 and $100. *Buckley*, 424 U.S. at 84, 96 S.Ct. 612.

5. In *Vote Choice*, the First Circuit was presented with a Rhode Island campaign finance law that required all Rhode Island political action committees ("PACs") to report the source and amount of all contributions made to them, regardless of amount, and found that

such a provision was "not, in all cases, constitutionally prescribed." *Id.* at 33. Although the court in *Vote Choice* ultimately found the provision to be unconstitutional in the context of the entire statutory scheme in question because it applied only to contributions to PACs and not contributions made directly to candidates (which were subject to a $100 disclosure threshold), the provisions at issue here apply are distinguishable because they apply to a candidate and the candidate's campaign committee. There is no disparate treatment of entities under the New York City law.

6. Plaintiff in this case does not challenge the New York City campaign finance law's contribution or expenditure limitations.

sure requirements impose no ceiling on campaign-related activities," and thus do not raise freedom of speech concerns. *Id.* at 64, 96 S.Ct. 612. Here, the challenged provisions require only the disclosure of certain information regarding a candidate's contributors, and do not implicate the First Amendment's privilege of free speech.

The cases cited by plaintiff to the contrary are inapposite. *Arkansas Right to Life State Political Action Comm. v. Butler,* 29 F.Supp.2d 540 (W.D.Ark.1998), addressed contribution limitations and disclosure requirements applicable to independent expenditures, which by definition are not connected to or authorized by a candidate or his campaign committee. In that context, the district court ruled unconstitutional a $500 limit on contributions to independent expenditure committees because it was "too low to allow meaningful participation in the political process" and a disclosure provision requiring individuals making independent expenditures to identify themselves in any advertisements for which they were responsible that discussed a candidate. *Id.* at 547–50. In *North Carolina Right to Life, Inc. v. Bartlett,* 3 F.Supp.2d 675 (E.D.N.C.1998), *aff'd in part, rev'd in part,* 168 F.3d 705 (4th Cir.1999), the district court held that a statute barring any corporation from making political contributions or expenditures was unconstitutionally overbroad because it applied to non-profit corporations that posed no threat to the integrity of the political process. Neither case suggests that a provision requiring the disclosure of a candidate's contributors burdens a candidate's First Amendment freedom of speech.

### 3. Free Exercise of Religion

■ Plaintiff's Free Exercise argument is also deficient, and borders on the frivolous. Plaintiff argues that the challenged campaign finance rules somehow infringe on his contributors' First Amendment right to free expression of religion, because plaintiff "will have to interrupt some or most of the worshippers while they are praying in order to qualify for matching funds." (Pl. Mem. at 2.)

■ The First Amendment prohibits the enactment of any law "prohibiting the free exercise" of religion. U.S. Const. amend. I; *accord Bronx Household of Faith v. Community School Dist. No. 10,* 127 F.3d 207, 216 (2d Cir.1997). To prevail on a Free Exercise claim, a plaintiff must show, at a minimum, that "the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520, 532, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993); *see also Genas v. State of New York Dep't of Correctional Servs.,* 75 F.3d 825, 831 (2d Cir.1996).

The challenged law in this instance simply provides that candidates for city offices cannot receive public matching funds for their campaigns if they do not disclose and keep records of information regarding their contributors. It is a neutral law of general applicability that does not burden, even incidentally, a particular religious practice. The disclosure provisions do not in any way compel the affirmation of any religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, lend its power to one or the other side in controversies over religious authority or dogma, or in any other way violate the Free Exercise clause. *See Employment Div., Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).

The only person who is interfering with the free exercise of religion in this case is plaintiff himself; it is his preference, not the law's, that he solicit individuals of a certain religious faith during their time of worship. Accordingly, plaintiff fails to

state a claim for a violation of the Free Exercise clause.

### B. Fourth Amendment Challenge

■ Plaintiff's purported Fourth Amendment "right to privacy" challenge also fails as a matter of law. (Am. Compl.¶ 10.) As no government searches or seizures, pursuant to a warrant or otherwise, are involved in this case, the Fourth Amendment is simply not applicable to plaintiff's case.[7] Nevertheless, the Supreme Court recognized in *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), that a general "right to personal privacy" exists under the Constitution based on personal rights that are "fundamental" or "implicit in the concept of ordered liberty," such as activities relating to marriage, contraception, family relationships, and child rearing and education. This right has been construed to includes "the individual interest in avoiding disclosure of personal matters" and "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 598–99, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

■ In this case, the challenged statute and regulation require only that a candidate for public office disclose the identities and residential addresses of his contributors and the amounts that they donated. There is simply no support for plaintiff's

argument that the New York City campaign finance law somehow infringes on a fundamental right to privacy of his to not disclose "personal matters."

The cases cited by plaintiff are distinguishable.[8] Without exception, they pertain to laws requiring certain public officials to disclose personal financial information to the public, such as their investments and the sources and amounts of their income.[9] The instant provision does not require the disclosure of any such personal information. Therefore, plaintiff cannot state a claim for an infringement on his right to privacy (or his contributors' rights for that matter).

### II. Plaintiff's Motion for a Preliminary Injunction

As the Court herein grants defendant's motion to dismiss, plaintiff's motion for a preliminary injunction is accordingly denied.

### Conclusion

As the Court holds that as a matter of law Section 3–03(c)(4)(i) of Title 52 of the Rules of the City of New York and Section 3–703(6) of New York City's Administrative Code and Charter are not unconstitutional on their face or as applied and that

---

7. In the case cited by plaintiff, *Carmel–By-The-Sea v. Young*, 2 Cal.3d 259, 85 Cal.Rptr. 1, 466 P.2d 225, 231–32 (1970), the California Supreme Court indicated that a right to privacy "of one's personal financial affairs … against public disclosure is an aspect of the zone of privacy which is protected by the Fourth Amendment." The United States Supreme Court, however, has stated ,in cases like *Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Whalen v. Roe*, 429 U.S. 589, 598 n. 23, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) that any right to personal privacy is derived from the Fourteenth Amendment's "concept of personal liberty and restrictions upon state action."

8. *E.g., Hunter v. City of New York*, 88 Misc.2d 562, 391 N.Y.S.2d 289 (N.Y.Sup.1976), *aff'd in part, rev'd in part*, 58 A.D.2d 136, 396

N.Y.S.2d 186 (1st Dep't 1977); *Barry v. City of New York*, 712 F.2d 1554 (2d Cir.1983); *Plante v. Gonzalez*, 575 F.2d 1119 (5th Cir. 1978); *Carmel–By-The-Sea v. Young*, 2 Cal.3d 259, 85 Cal.Rptr. 1, 466 P.2d 225 (1970).

9. In any event, while courts, including the Second Circuit, have "recognized the existence of a constitutionally protected interest in the confidentiality of personal financial information," they have repeatedly upheld such disclosure provisions when they are supported by a "sufficiently weighty government purpose." *Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317, 323 (2d Cir.1999) (citing cases). As discussed above, the government has a sufficiently weighty purpose in requiring the disclosure of a contributor's name and address in this case.

plaintiff should not be exempted from the disclosure provisions, plaintiff's Amended Complaint must be dismissed. Defendant's motion to dismiss is granted and defendant's motion for a preliminary injunction is denied. The Clerk of the Court is instructed to close the case.

SO ORDERED.